*116
 
 Rapallo, J.
 

 When this case was before the late Court of Appeals, on the appeal of the defendants (38 N. Y., 366), it was decided that the terms “ not hazardous ” and “ hazardous,” employed in the policy, had a precise meaning, clearly defined by the policy itself, and did not include articles mentioned in the policy as “extra hazardous” and
 
 “
 
 specially hazardous,” and that turpentine being one of the articles named in the policy as
 
 “
 
 extra hazardous,” the keeping of that article in the plaintiff’s store was a violation of the express terms of the policy, and fatal to a recovery thereon. Also that evidence that turpentine was usually kept in country stores, was inadmissible for the purpose of explaining or enlarging the policy, the contract being specific.
 

 That decision disposes of all the questions in the ease, except those which arise upon the offers of additional evidence made by the plaintiff on the second trial and rejected by the court.
 

 The first "of these offers was to prove that before the issue of the policy in suit, a policy issued by the Kings County Fire Insurance Company to the plaintiff’s assignor on his stock, “ such as is usually kept in country stores,” contained in the store in question, was mailed to the defendants, with a request to issue their policy on the stock in the same store to the amount of $3,000, in the language of and just like the Kings county policy, and that the wording should be followed exactly as in that policy; and that in response to that request the defendant sent to the plaintiff’s assignor the policy in suit.
 

 This evidence must have been offered for the purpose of laying the foundation of a claim or argument on the part of :the plaintiff, that by sending the policy in response to this application, the defendant assented to and assumed to comply with the request made of it, and that it therefore treated the language of the policy sent, as synonymous with that of the Kings county policy. In other words, that the facts offered to be proved amounted to an admission by the -.defendant that both policies meant the same thing. For no
 
 *117
 
 other purpose can the evidence have been material or relevant. The evidence was properly rejected for two reasons. First, because the facts offered to be proved would not, if established, have justified or sustained an inference or finding by the jury that the policy sent was intended as a compliance with the request made by the plaintiff’s assignor. The wording of the Kings county policy was sufficient, as was held in the case of
 
 Pindar
 
 v.
 
 The Kings County Insurance Company
 
 (36 N. Y. R., 648), to cover any and every description of goods usually kept in country stores, embracing extra hazardous, as well as hazardous, if proved to be usually kept in such stores. The request was to follow exactly the wording of that policy. So far from doing, or attempting to do so, the defendant sent a policy worded in an entirely different manner, not at all resembling the policy sent as a precedent, but on the contrary expressly restricting the insurance to the two classes of goods defined as not hazardous and hazardous. This was in effect a refusal to grant as comprehensive a policy as the one applied for, and must have been so understood by any person of ordinary intelligence on a comparison of the two policies.
 

 But in the second place, had the offer been to prove by oral evidence that the parties to the contract intended the policy in suit to be co-extensive with the Kings county policy, such evidence would have been wholly inadmissible. Evidence of surrounding circumstances, and other parol evidence is in some cases admissible to show the meaning of language employed in a contract, or the sense in which it has been used, but never to show the intent of the parties as contra-distinguished from what the words express; and when the language of an instrument has a settled legal construction, parol evidence is not admissible to contradict that construction. Where the policy, as in this case, expressly declares that only goods not hazardous and hazardous are insured, and that the keeping of extra hazardous, or specially hazardous goods on the premises shall avoid the policy, and such language has a settled meaning, parol evidence tending to
 
 *118
 
 show a different understanding or agreement, preceding or cotemporaneous with the issuing of the policy, is inadmissible. All such understandings are -merged in the written instrument, and neither party can be permitted to prove that the instrument does not mean what it says.
 

 The evidence was not admissible for the purpose of showing notice to the defendant that the plaintiff’s assignor kept in the store such merchandise as -was usually kept in country stores, and that consequently, it insured the goods in the store as it was. That notice -was not material, so long as the defendant did not accept the risk as offered, or insert in the policy its permission to keep the prohibited goods.
 
 (Barrett
 
 v.
 
 The Union Mutual Ins. Co.,
 
 7 Cush., 175, 180;
 
 Lee
 
 v.
 
 Howard Co.,
 
 3 Gray, 583, 592.) The policy gave notice to the insured, in plain language, that so long as the prohibited goods were upon the premises the policy was not operative, and that if he desired to avail himself of the insurance, he must remove them. If he was not content to submit to those conditions, he should have rejected the policy.
 

 The second and only other offer of proof not passed upon on the former appeal, was, that neither the assured or the plaintiff discovered the difference between the wording of this policy and that of the Kings County Insurance Company until after the fire.
 

 This fact could not change the construction of the instrument. The failure of the insured to read the policy could not enlarge the liability which it imposed upon the defendant. The evidence was, therefore, clearly immaterial for the purposes of this action. The fact offered to be proved, explains the conduct of the assured in relying upon a policy so illy adapted to his protection, and adds another to the often recurring instances, in which the object for which insurance is sought, is frustrated by the neglect of the assured to acquaint himself with the provisions of his policy. So long as insurance companies are permitted to deal with the public as they do, by issuing policies encumbered with an
 
 *119
 
 infinite variety of complicated printed conditions and stipulations, which the courts are bound to enforce as constituting essential parts of the contract, there is no safety in accepting a policy without the most rigid scrutiny of its contents. It is true that this degree of care is not usual with the mass of mankind, and, through their want of caution, insurers often escape the liability which they were supposed to have assumed; and it would be exceedingly desirable, if practicable, that some system should be devised by which a simpler and more uniform description of policy, and one more readily understood, should be adopted by those carrying on the business of insurance under the protection of corporate franchises. But as the law now stands, there is no restriction upon the insertion, in policies, of any conditions not unlawful in themselves, and they must be construed and enforced by the courts in the same manner as other private contracts, whose provisions are understood and assented to by the contracting parties.
 

 The judgment must be afiirmed with costs.
 

 All concur except Allen, -L, not voting.
 

 Judgment affirmed.