Church, Ch. J.
 

 It is objected, on the part of the appellant, that some of the buildings insured, and the two in which the fire originated, were used for a purpose not permitted by the terms of the policy, and that the policy was therefore void. Of the forty buildings insured, seven only were injured by the fire,, two of which were used for distillery purposes. After a description of the premises the policy contains, in writing, the following: “ The above premises aré privileged to be occupied as hide, fat melting, slaughter and packing houses, and stores and dwellings,
 
 and for other extra hazardous parposes.”
 
 Annexed to the policy is a classification of hazards. In the second class are defined “ hazardous Ro. 2,” “ extra hazardous Ro. 2,” “ extra hazardous Ro. 3,” and “specially hazardous.” The occupations specifically privileged, such as “ hide, fat melting, slaughter and packinghouses,” do not fall within any definition of “ extra hazardous,” but do come within that of specially hazardous, and distilleries belong to the same class.
 

 In
 
 Pindar
 
 v.
 
 The Continental Ins. Co.
 
 (38 N. Y., 366), it was held that the meaning of the terms “ hazardous ” and “ not hazardous ” is to be determined by the definition of those terms contained in the conditions of the policy, and did not include “ extra hazardous ” or “ specially hazardous ” articles; and consequently, that the keeping of turpentine, being an article defined as “ extra hazardous,” was a violation of the terms of the policy, and prevented a recovery. It was not decided in that case that these terms had any such technical or fixed meaning, that their signification might not be modified or varied in a given case by a reasonable construction of stipulations inserted by the underwriters at the time of issuing the policy. The same case came before this court recently, and the above decision was followed upon the express ground that the definition of these terms in the policy was controlling, which of course, would not affect modifica
 
 *603
 
 tions by other stipulations. (See Opinion by Rapadlo, J.
 
 ante,
 
 114).
 

 It is an elementary rule that where there is an inconsistency in the written portion of a policy, and indeed of any contract the written is to be preferred to the printed, as the attention of the parties is supposed to be more directly drawn to such parts as are written than to the printed, which are used in all cases. (2 Par. on Contracts, 516; 1 Arnould on Insurance, 80.)
 

 The privileged uses specified are
 
 “
 
 specially hazardous,” as defined in the classification of hazards annexed to the policy. They are not enumerated, but are included in the general words of
 
 “
 
 all workshops, manufacturing establishments, trades and mills, not above enumerated as hazardous or extra hazardous.” The words in the policy, “ or
 
 other
 
 extra hazardous purposes,” must be taken to mean purposes of the same class as those before specified, and the term
 
 “
 
 extra hazardous ” must yield to the specifications accordingly.
 

 If the language had been,
 
 and other like purposes,
 
 the right of the plaintiff to use the premises for any purpose enumerated as specially hazardous would have been unquestioned. ISSTo other construction could have been given. The language used is certainly capable of the same construction, and such is the construction which persons receiving a policy would ordinarily put upon it. It is the same as though every occupation enumerated as specially hazardous had been specified, and then the general words, “ and other
 
 extra
 
 hazardous purposes,” used. In such a case it is clear that the term
 
 “
 
 extra hazardous ” would be construed with reference to the specifications preceding them, upon the principle that general words yield to' particular recitals. (2 Par., 501, note a.) I think this principle applies to this policy, and that the plaintiff had a right to use the premises for any specially hazardous purpose. Insurance companies are not restricted in the right to insert such terms and conditions in their policies as they see fit, and it is the duty of courts to construe them according to established legal
 
 *604
 
 principles. If persons receiving policies neglect to examine these conditions they must take the consequences, but legal principles and public policy demand that equivocal language, especially if calculated to mislead the assured, shall be construed most strongly against those using the language and issuing the policies.
 

 It is a general rule, that in cases of doubt arising from the ambiguity of the language, the construction is to be favorable to the grantee. (10 N. H., 305.) Chancellor Kent says the true principle is
 
 “
 
 to give the contract the sense in which the person making the promise believed the other party to have accepted it, if he in fact did so understand and accept it,1’ and this of course must be determined by the language used and the surrounding circumstances. (2 Kent’s Comm., 557.) The words
 
 “
 
 other extra hazardous purposes ” would naturally be understood to include other like purposes, and we must presume that both parties so understood it.
 

 The special finding of fact by the jury has an important bearing upon the question. That finding is, that the plaintiff’s agent informed the company at the time the renewal or new policy was applied for, that he thought that a change had occurred in the business carried on in the premises, and referred them to the Merchants’ Insurance Company for information on that subject. The Merchants’ Insurance Company had, it seems, recently insured the property, and caused a survey to be made, and if the defendant had made the inquiry, it would have led to a knowledge of the real facts. The statement of the agent, therefore, that he thought a change of business had taken place, and a reference to where the fact could be ascertained, was equally effective as a notice of the very change that had been made. In such a case, whatever is notice enough to excite attention, and put a party upon his guard and call for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant'with it. (2 Kent’s Comm., 631, note
 
 1;
 
 3 Myl. and Keen, 719.)
 

 
 *605
 
 It is mmeccssary however, to go beyond actual notice that a change had taken place which the finding established. This knowledge is a circumstance proper to be considered in determining the intention of the defendant in the language employed, and it does not conflict with the rule that parol evidence is inadmissible to vary the terms of written instruments. 'We may resort to surrounding circumstances in all cases of doubtful construction and
 
 patent
 
 ambiguity. If the words are clear and unambiguous, a contrary intention derived from outside circumstances is of no avail. A new contract cannot be made by showing that the intention was to make one different from that expressed. But to ascertain what the contract is in case of ambiguous language, a resort may be had to the circumstances surrounding the author at the time. So his knowledge or ignorance of certain facts ■ are competent to determine what he meant by the language used, As in a devise to Mary B., for life, with remainder to her three daughters, Mary, Elizabeth, and Ann. At the date of the will Mary B,. had two legitimate daughters, Mary and Ann, living, and one illegitimate, named Elizabeth. It was held that evidence was admissible to show that Mary B., formerly had a legitimate daughter named Elizabeth, who died some years before the date of the will, and that the testator did not know of her death, or of the birth of an illegitimate daughter. (12 A. and E., 431.) So where a testator devised a farm in A. in possession of T. II. to T. R, and he had two farms in A. in possession of T. II., it was held that if one of the farms was subject to a trust, or if the testator supposed it was and treated it as such, the other farm would pass by the devise, as he was presumed to have intended the farm devised for the personal use of T. R (12 Eng. Law and Equity, 52.)
 

 Mr. Parsons, in his work on Contracts, lays down the rule in such eases as follows: “ If the meaning of the instrument, by itself, is affected with uncertainty, the intention of the parties may be ascertained by extrinsic testimony, and this intention will be taken as the meaning of the parties expressed in the instrument, if it be a meaning, which may be dis
 
 *606
 
 tinctlv derived from a fail’ and rational interpretation of the words actually used.”
 

 This intention, however it should he observed, is to be ascertained, except in cases of
 
 latent
 
 ambiguity, by a development of the circumstances under which the instrument was made. Mere declarations are not admissible for the purpose, but the knowledge of facts by the party is competent, and notice that a change had been made is as potent upon the question of intention, as if the defendant knew that these buildings were actually used as distilleries. I think they are chargeable with that knowledge; but they certainly knew that a change had taken place.
 

 We are to place ourselves, as nearly as may be, in the position of the author of the instrument, and consider the facts surrounding him, with his knowledge or ignorance of facts, and with his belief of the existence or non-existence of certain facts, and, in that position, we may often see clearly the meaning of language, which, without these aids, would be unintelligible or doubtful.
 

 The old policy which had expired contained the same language as this one permitting, specifically, several specially hazardous uses; and with a knowledge that a change had taken place in the use of some of them, we must presume an intention on the part of the defendants to provide for them in this policy, and as those uses expressly permitted belonged to the highest grade of hazards, and the language employed is capable of a construction permitting all other like uses, we are bound to presume that the defendant intended such a construction, otherwise it must have acted in bad faith, which is never presumed. We are to suppose, if the language will permit it, that the defendant intended to protect the property of the assured according to the change which it knew had taken place. The distinction between this and the
 
 JPvnda/r case
 
 is, that in that case the language was held to be unambiguous, and, although the policy was claimed to be different from that called for, yet, having been issued, delivered and accepted, and sued upon,
 
 *607
 
 the assured was bound by its terms, and that extrinsic evidence of circumstances, or otherwise, was incompetent to change it.
 

 Such is the established law, but it does not apply to a case where the language is capable of different constructions. The defendant was defeated upon the issue of fact made in the court below, and that finding is conclusive upon this court, whether right or wrong, and the effect of it, upon what the defendant intended by the language used, is adverse to the construction put upon it by it.
 

 This construction of the contract renders the testimony offered, that distilleries are more hazardous than the establishments specified, immaterial.
 

 The assured having the right to use the premises for any specially hazardous purpose, it was not competent to prove any distinction of hazard in these premises.
 

 In the Pindar case, mvpra, it would have been incompetent to show that turpentine was not more hazardous than some of the articles enumerated as hazardous, simply because, by the terms of the policy, that article was fixed at a higher grade of hazard by being defined as extra hazardous.
 

 The defendant is precluded from claiming any breach of warranty or fraudulent representation in the application upon which this or the first policy was issued. The first policy was issued upon the survey of an agent of the Standard Insurance Company, and not upon any representation of the plaintiff or her agent; and the survey was, in all respects, correct. (18 N. Y., 552; 3 Keyes, 557.)
 

 This finding takes away all ground of complaint of fraud or unfairness on the part of the assured; and as the rigid construction claimed by the defendant cannot be sustained, the judgment must be affirmed with costs.
 

 Allex, Peckuam, and Rapallo, JJ., for affirmance, on the ground first stated in opinion. Grover and Folger, JJ., not voting.
 

 Judgment affirmed.