BOWMAN v. AGRICULTURAL INSURANCE COMPANY, appellant.

*Fire insurance—parol evidence as to subject of—waiver of conditions.*

In a policy of insurance upon personal property, situated in farm buildings, and in the application therefor, the expressions employed were inaccurate and uncertain, to such a degree as to render it doubtful which buildings were meant. *Held*, in an action upon such policy, for loss, that it was competent to explain the ambiguity in the policy and application by extrinsic evidence.

An insurance policy contained a provision that the premium was due and payable upon the delivery of the policy, but where credit was given the premiums should be paid within four months from the date of the policy, and, if not paid within that time, the company should not be liable for any loss that might occur. It also contained a provision that no agent of the company was permitted to waive any stipulation or condition contained therein. *Held*, that the provision as to payment might be waived by the company, or its authorized agent, and this waiver might be by parol.

Plaintiff had insured with defendant, an insurance company, certain property, by a policy containing the above named provisions. The arrangements were made with an agent; the policy was sent by the company directly to plaintiff, without requiring prepayment, and without any limitation of credit being suggested. *Held*, that it was for the jury to determine whether the provisions of the policy were waived.

APPEAL, from judgment on verdict. The cause was tried before Justice Bockes, and a jury, at the Schenectady circuit, in March, 1873.

The action is upon two policies of insurance, executed by the

defendant to the plaintiff, one insuring certain property of the plaintiff, to wit: Household furniture, provisions, wearing apparel, live stock, farming utensils, wagons and harness, for the three years, from May 20, 1871; the other, certain other property of the plaintiff, to wit: $1,000 on produce, for a like term, from the 30th day of September, 1871, and is to recover for loss by fire and lightning, of wagon and farming utensils, under the first policy, and for produce, under the second. The total loss, as shown by proofs of loss, was $851.50. The loss under the first policy was $75.50. The loss under the second policy, on produce, was $776. The plaintiff resides at Clifton Park, Saratoga county, N. Y., where the loss occurred. Two grounds of defense are set up in the answer:

1st. That the loss did not happen in the place where the property was insured.

2d. That the second policy was forfeited, previous to the loss, by reason of the non-payment of the premium within four months from the date of the policy. The application or survey upon which the first policy was issued, dated May 20, 1871, No. 187,803, designated the place where the property was insured.

The application or survey upon which the second policy was issued, dated September 30, 1871, refers to the survey or previous application as describing the place where the property insured was situated. The policies contain, among other things, the following provisions: "The premium is due and payable upon the delivery of the policy; but where credit is given to the extent of four months, this policy will be valid and in force during that time; but, unless the note or account for the premium shall be paid within four months from the date of this policy, the company will not be liable for any loss that may occur after the expiration of said four months. If no loss has occurred, payment of the premium after said four months will render this policy valid;" also a provision that no agent of the company is permitted "to waive any stipulation or condition contained therein."

The evidence was conflicting as to which barn was intended, and the material facts, as well as the questions raised, are stated in the opinion. The jury found in favor of the plaintiff for the amount claimed, and interest, being $868.81. Judgment was entered, and the defendant appealed from the judgment.

*Samuel Hand*, for appellant.

*J. S. Landon*, for respondent.

MILLER, P. J.   The motion for a nonsuit, made by the defendant's counsel, was founded upon two grounds :

1st. That there was no contract between the parties, for any insurance, upon any of the property destroyed in the place where the loss occurred.

2d. That the policy of September 30, 1871, by the non-payment of the premium, according to the condition of the same, became forfeited prior to the alleged loss.

I. As to the first ground:   If the testimony tending to prove that the agent was informed which barn was the hay and grain barn of the plaintiff, and intended to be embraced in the policy, was competent, then it cannot be upheld.   I am inclined to think that the testimony was properly received.   It appears that the policy of May 20, 1871, includes the "barns" on the premises, and, although in the application the distances of each of the barns from the house are not stated, and, perhaps, the size of one is not accurately given, yet, upon the whole, it is quite apparent that the policy actually did cover the contents of both barns, which were intended to be insured, beyond any question.

As to the policy of September 30, 1871, there is more difficulty. The policy specifies between the printed words "barn No. 1 " and "barn No. 2," produce, etc., "in barns now occupied by applicant." The application upon which this policy was based after the printed words "barn No. 1," and between these and the words "barn No. 2 " has the following words, "produce therein, hay and grain, $1,000, insured at present residence."

It has also, under the words, " size of barns " as follows : " Survey No. policy 187,803," which is the number of the first policy.   Also, "distance of barns from house, etc., north barn from house ten rods."

In the application or survey which is referred to as above, are the following words, " size of barns, 30x40 ; shed, 18x60.   The distance of "barns from house, etc.," is also stated as follows, " west barn from house twelve rods."   The two barns were forty rods apart, one of them being south-west of one of the dwelling-houses, and the other barn about ten rods south of the other dwelling-house.   In the last mentioned survey the dimensions are also given of the dwelling-house in which the plaintiff lived, and not of the other one.   The policy specifies "barns," although this description is after "barn No. 1."   The application for the last insurance refers to the size of "barns" and distance of "barns," and it must be admit-

ted that there is great want of accuracy and precision in the expressions employed, and that the latter policy and application contains uncertain, ambiguous and inconsistent statements. As there were two barns and two dwelling-houses, it is not entirely clear that the barn, which contained the property destroyed, was not included. There is certainly sufficient to create considerable doubt upon the subject, and I am inclined to think that the facts and circumstances presented a case of latent ambiguity, which was open to proof by extrinsic evidence.

The courts have gone very far in allowing evidence to explain doubtful language. In *Burr* v. *Broadway Ins. Co.*, 16 N. Y. 267, where the policy described the building occupied as a cordage factory on the "No." west corner "by which the owners were insured on their lignum vitæ contained in a cellar of said building," it was held that, assuming that the abbreviation "No." and a reference in the policy to a survey, etc., applied the description to the north-west corner, it was competent for the insured to prove, for the purpose of showing that a building on the south-west corner was intended, that they were the owners of buildings on both corners, etc., but differing in that the building on the south-west corner was occupied as a cordage factory, and had a cellar under it in which a large quantity of lignum vitæ was kept in store, while that on the north-west corner was occupied as a block factory, and had no basement, but a cellar containing a small quantity of lignum vitæ. If the evidence introduced was competent in the case last cited, I am at a loss to see why it is not equally proper to show what barn was intended, where more than one is named. See, also, as bearing upon the same question, *Reynolds* v. *Commerce Fire Ins. Co.*, 47 N. Y. 597, which holds that, when equivocal language is used, especially such as is calculated to mislead, it is to be construed most strongly against the company using it. Also, *Clinton* v. *Hope Ins. Co.*, 45 N. Y. 454. The case of *Pindar* v. *Resolute Ins. Co.*, 47 N. Y. 114, is not in any respect in conflict with those above cited, as there was no question of doubtful interpretation or of ambiguity to be explained.

II. The second ground for a nonsuit was also, I think, properly overruled. The authorities hold, beyond any question, that a condition in a policy of insurance that no insurance shall be considered as binding until the actual payment of the premium may be waived by parol by the company, or its authorized agent, and this waiver

may be shown by direct proof that credit was given, or may be inferred from circumstances. See *Bodine* v. *Exchange Fire Ins. Co.*, 51 N. Y. 117, and authorities there cited.

The provision in the case at bar was no more strict than in the cases cited, and if the evidence established a waiver it would not defeat the plaintiff's claim to recover. The cases to which we have been referred, as holding a different doctrine, cannot, I think, be considered as establishing any other rule. *Baker* v. *Union Mut. Life Ins. Co.*, 43 N. Y. 283, merely hold that an unsuccessful demand of payment could not be construed into an abandonment and waiver of any of the terms or conditions of the note or policy, or as an alteration of the contract, in any particular. The case of *Hall* v. *Home Ins. Co.*, 8 Bosw. 597, turned upon the question whether there was proof to show that the agent had authority to vary contracts made by the defendants, or to waive any condition of the same. If it can be considered as sustaining a doctrine adverse to the rule laid down in 51 N. Y., *supra*, it is not sound law. In *Stringham* v. *St. Nicholas Ins. Co.*, 37 How. 365, the question was, whether the agent had power to consent to assignments of policies where the proof showed that his powers were restricted, and were not of so general a character as to give him authority to do the act in question.

Provisions of this character are to be construed strictly against the insurer, and as the provision under consideration contemplated a credit and only provided for a forfeiture "where credit is given to the extent of four months," can it be said to be applicable when a longer or an indefinite credit was extended? According to this condition "the premium is due and payable upon the delivery of the policy." The arrangements for the policy were made with the agent; the application indorsed, as approved by one of the directors, and the policies received by plaintiff, from the post-office. They thus came directly from the office of the company, and were sent without requiring pre-payment, and without any limitation of credit being suggested. The case is far stronger than 56 N. Y. 260, *supra*. And there is evidence from which it might well be inferred that not only the agent extended the credit, without limit, but it was also done at the home office of the company, and with their approbation and consent. If the company thus consented, the restriction upon the agent's authority to waive any stipulation or condition is of no importance, and the waiver

may have been complete, without regard to the acts of the agent. As the evidence stood, the case was properly submitted to the jury, upon the question of waiver, as well as upon the other questions of fact, and there was no error in refusing to direct the jury that the defendant was not liable under the policy of September 30, 1871, nor in any other of the rulings upon the trial.

The judgment should be affirmed, with costs.

*Judgment affirmed.*