JOSEPH McNIERNEY, RESPONDENT, *v.* THE AGRICULTURAL INSURANCE COMPANY, APPELLANT.

*Warranty that property insured shall not be encumbered — notice to the insurer, at the time of the issuing of the policy, of an intention to mortgage the property, does not dispense with the necessity of procuring its consent to this being done.*

Where, during the progress of negotiations for a policy of fire insurance, it is verbally agreed by the insurer that the insured may mortgage the premises when they are conveyed to him, at a future time mentioned in a land contract under which he holds the property, but no mention is made of such an agreement in the policy when issued, the subsequent giving of such a mortgage, without the written consent of the company, is a violation of a warranty contained in the policy that the property should not become " encumbered by mortgage, judgment or otherwise," without procuring such consent.

After the deed had been delivered and the mortgage given, the company consented to an assignment of the policy, which had been issued to the former owner, to the plaintiff.

*Held*, that as the company had no actual notice, at the date of the assignment, that the mortgage had been given, it was not bound to know of its existence by reason of the verbal agreement theretofore made.

That a notice of an intended act, at a specified date in the future, does not ripen into knowledge of an existing fact, even when the period specified has passed.

APPEAL from a judgment in favor of the plaintiff, entered upon a verdict rendered at the Herkimer Circuit and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

The complaint was in the usual form of a strict action at law upon a policy of fire insurance, and the demand for relief was for money only, with no general prayer. While several defenses were pleaded the only one pressed at the trial was a breach of a warranty in the policy, that the property insured should not be encumbered by mortgage or otherwise, without the written consent of the defendant. On and before the 6th of October, 1884, one Helen Olds owned the property in question, consisting of a barn and dwelling-house, which, with the land where they stood, she had agreed about one month before to convey to the plaintiff on the 1st of January, 1885. She had also agreed to assign to the plaintiff an insurance policy, issued by the defendant upon said buildings, which, as she supposed, had about one year to run. In fact, said policy ran only until noon of October 6, 1884. She was informed by the agent of the defendant of her mistake as to the time when the policy expired, and, thereupon, it was agreed between her and the plaintiff that she would cause the policy to be renewed for three years, and thus secure the reduced rate of insurance, pay for it herself, and that when she conveyed the premises to the plaintiff he would pay her for two years, or two-thirds of the premium. The negotiations which resulted in this agreement were conducted by the defendant's agent, who was trying to secure the insurance of the property for another term, and who was authorized to countersign policies. During the progress of the business the plaintiff informed said agent, as the jury found upon the trial, that he intended to place a mortgage for $2,000 upon the property when it was conveyed to him, and the agent replied that that would be all right. It was not until this

declaration was made by the agent that the plaintiff agreed that Mrs. Olds might renew the policy for three years, and he would pay her his share of the expense. The policy in question was thereupon issued bearing the date of October 6, 1884, and the premium was paid by Mrs. Olds. The policy contains a warranty that if the real property thereby insured, or any part thereof, should be sold or conveyed, or if the property, either real or personal, or any part thereof, should become encumbered by mortgage, judgment or otherwise, the entire policy and every part thereof should be null and void, unless the written consent of the defendant, at its home office, should be obtained. While the policy states that the premises were contracted to be sold to the plaintiff, it does not give permission to any one to place a mortgage upon the property, and no consent that this might be done was obtained after the policy was issued.

About the 3d of January, 1885, Mrs. Olds conveyed the premises to the plaintiff, and on the sixth assigned the policy in question to him, the defendant, through its said agent, at the same time formally consenting to said assignment. On the third day of the same month the plaintiff executed and delivered to one Corey a mortgage upon the premises, to secure the payment of $2,000 in five years, with annual interest. The date of the mortgage was December 31, 1884, and of the deed January 1, 1885, while both were recorded on the 3d of January, 1885. The policy appears to have been sent to the scrivener who had drawn the land contract, and who was relied upon to draw the deed. It does not appear that either Mrs. Olds or the plaintiff saw it until January 6, 1885, when the defendant assented to the assignment, but after this it was in the custody of the plaintiff. No request was made to have the oral agreement inserted in the policy, but so far as appears, the plaintiff accepted and was satisfied with it as he received it.

On the 14th of December, 1885, the defendant, through the same agent, placed insurance to the amount of $150 upon produce in said barn, by an appropriate indorsement to that effect upon the policy. At the same time the defendant consented that the dwelling-house might remain unoccupied for the period of three months, by a writing duly signed by said agent.

The property insured was entirely destroyed by fire on the 20th of January, 1886.

Upon the trial the court charged the jury that " If it was a part of the original bargain of insurance between the agent of the company and Mr. McNierney that he, McNierney, should have the right to place a $2,000 mortgage upon the property, upon his completion of the purchase from Mrs. Olds in the following January, then it is not a defense here to prove the fact that he gave such a mortgage." To which the defendant excepted.

*A. H. Sawyer,* for the appellant.

*C. A. Moon* and *George W. Smith,* for the respondent.

VANN, J.:

It does not appear that the defendant had any knowledge of the mortgage except from the statement made by the plaintiff to its agent prior to the issuing of the policy, that he intended to place such a mortgage upon the property in about three months, when the premises were to be conveyed to him. The authority of the agent was such as to impute to the defendant any knowledge that he acquired in the transaction of its business. ( *Whited* v. *Germania Fire Ins. Co.,* 76 N. Y., 415 ; *Sprague* v. *Holland Purchase Ins. Co.,* 69 id., 129, 132.)

The question presented for decision, therefore, when stated as favorably as possible for the plaintiff, is this : Where during the progress of negotiations for a policy of fire insurance it is verbally agreed by the insurer that the insured may mortgage the premises when they are conveyed to him, as provided in a land contract under which he holds the property, but no mention is made of such agreement in the policy when issued, is the giving of such mortgage a violation of a warranty that the property should not become " encumbered by mortgage, judgment or otherwise ? "

A policy of insurance, like other written contracts, is presumed to embrace the entire agreement between the parties. After it has been delivered and accepted, parol evidence is not admissible to control or vary its terms. ( *Mayor, etc.,* v. *Brooklyn Fire Ins. Co.,* 3 Abbott's Ct. App. Dec., 251 ; *Pindar* v. *Resolute Ins. Co.,* 47 N. Y., 114, 117 ; *Ripley* v. *Ætna Ins. Co.,* 30 id., 136 ; *Alston* v. *Mechanics Mut.*

*Ins. Co.*, 4 Hill, 329; *Jennings* v. *Chenango County Mut. Ins. Co.*, 2 Denio, 75.) If the policy, as issued, does not embrace the entire agreement, it may be reformed by an action in equity brought for that purpose. (*Cone* v. *Niagara Ins. Co.*, 60 N. Y., 619; *Mahar* v. *Hibernia Ins. Co.*, 67 id., 283.) Until it is reformed it can only be enforced as it was written. The object of this action was not to reform but to enforce the policy without changing its terms. Therefore, the parol agreement of the defendant, made before the policy was issued, cannot, in this action, be regarded as a part of the policy, or in any way effective as a contract. Whatever force it has must be by way of notice to the insurer of a fact that had not happened, but was expected to happen. It is now well settled that knowledge of an existing fact that would avoid the policy from its date, will estop an insurer from insisting upon such fact as a breach of a warranty. (*Van Schoick* v. *Niagara Ins. Co.*, 68 N. Y., 434; *Woodruff* v. *Imperial Ins. Co.*, 83 id., 135; *Short* v. *Home Ins. Co.*, 90 id., 16.) This, however, is to prevent fraud, for to hold otherwise would allow an insurance company to receive pay for a valid policy, when it knew that it was invalid from the beginning. (Id.) It is so held, not simply because the policyholder paid his money without being insured, but because the company took his money knowing that he was not insured. It is an existing fact that renders the policy void, and it is knowledge of that existing fact that constitutes the fraud. As said by the Supreme Court of Indiana in *Havens* v. *Home Insurance Company* (111 Ind., 90; S. C., 12 Northeastern Rep., 137), this does not deny to insurance companies the right to impose conditions upon which they will assume risks. It does nothing more than to prevent them from taking advantage of conditions when they have full knowledge of incidents and facts connected with the risk, which are inconsistent with the conditions imposed. While notice of the existing fact may be shown by oral evidence, it is not received to contradict the written agreement, but to show that one of its provisions cannot lawfully be used against the insured.

The principle upon which these cases rest has no application to the case under consideration. The policy in question was valid when it was issued, and it remained valid until the plaintiff placed the mortgage upon his property, without obtaining the consent of the defendant.

It was his own act and omission, not the act or omission of the defendant, that rendered it invalid. The company did not know that the mortgage had been given until after the fire had occurred. It is not a case of an executed and existing mortgage, with notice thereof at the time the insurance was effected. Under these circumstances is there any fraud to estop the defendant from invoking the warranty against incumbrances as a defense? None, clearly, unless a parol waiver in advance of an essential part of the policy constitutes fraud. It cannot be held to constitute fraud in an insurance contract, unless it would be so held in any contract. But it would promote rather than prevent fraud to hold that any part of a written contract could be so easily sworn out of it. It would be like stopping up a crack and opening a door. It would allow any condition to be taken out of any written agreement by simply showing that it was verbally waived before the contract was signed. It might take a covenant of warranty out of a deed, an insurance clause out of a mortgage, or an agreement not to assign or under-let out of a lease. What written agreement would be safe? How could the honest and prudent protect themselves against forgetfulness, carelessness or perjury? What restriction, inserted for the benefit of the insurer, could be relied upon? Of what advantage to the underwriter would the written agreement be? If a risk insured as non-hazardous is converted into a powder mill, can the owner insist that the contract is valid because the agent, possessing general powers, verbally agreed, before the policy was issued, that he might make the change? How can insurance companies protect themselves if the most carefully written condition is subject to an imperfect memory or an elastic conscience? Could not the most exacting policy be thus turned into a contract of indemnity against any kind of a fire, under all possible circumstances?

The few reported cases bearing directly upon the controlling question on this appeal, sustain the position that such a parol waiver will not relieve a policy from the effect of a broken condition.

In *Forbes* v. *Agawam Insurance Company* (9 Cush., 470, 473) it was held in substance that if underwriters insure property with notice of existing insurance thereon, already made and capable of proof, such double insurance exists by their act, and, of course, with their consent, notwithstanding any restrictive clause in the policy to

the contrary, but that notice in advance that the assured wished to make further insurance cannot have that effect.

In *Havens* v. *Home Insurance Company* (*supra*) it was verbally agreed that the insured might procure other insurance on the property, but this was not inserted in the policy. It was held that whether such agreement was made before or after the policy was issued, it was not a waiver of a warranty against other insurance without the consent of the company.

In *Western Assurance Company* v. *Rector* (3 South-western Rep., 415) it was held by the Court of Appeals of Kentucky that where a policy of insurance, issued upon a general stock in a country store, prohibited the keeping of gunpowder, the fact that the agent of the company knew when the application for insurance was made that the insured intended to keep gunpowder, and represented that the provision in the policy did not prevent him from keeping it, could not prevail against the express prohibition.

In *Frost's Detroit, etc., Works* v. *Millers and Manufacturers' Mutual Insurance Company* (34 North-western Rep., 35) it was held by the Supreme Court of Minnesota that proof of notice to the agent of the company, at the time the insurance was effected, that the insured intended to enlarge the building covered by the policy, was incompetent to vary a provision in the contract that said building should not be altered, added to or enlarged without consent.

In *Mayor, etc., of New York* v. *Brooklyn Fire Insurance Company* (3 Abb. Ct. App. Dec., 251) the underwriter offered to show that the insured at the time of the application for insurance, made certain representations as to the possession and use of the building, which were not embodied in the policy, but it was held that the proof proposed was inadmissible, as it would violate the rule excluding parol evidence to vary a written contract.

It is claimed that the assignment of the policy on the sixth of January, with the consent of the defendant, was a new contract between the parties to this action, and that as the company had notice of plaintiff's intention to mortgage the property on the first of January, it was bound to know that the mortgage was in existence; or, in the language of counsel, that "it had equitable and potential notice of the mortgage." The defendant had no actual notice at the date of the assignment that the mortgage had been

given. To hold that it was bound to know of its existence on account of the conversation in September, before the policy was issued to Mrs. Olds, as to the plaintiff's intention to give a mortgage, would be giving an indirect but complete effect to the parol agreement. Why was it bound to know it? Simply because it had orally agreed to it in advance. No other reason is suggested. Notice of an intended act at a specified date in the future does not ripen into knowledge of an existing fact, even when the period specified has passed. The mortgage was not given pursuant to the land contract that was in existence when the policy was issued, for the plaintiff testified that he told the agent, at the time of the parol agreement, that he did not know of whom he should get the money. It was not given to Mrs. Olds, but to Mr. Corey, whose name was not mentioned to the agent. Hence the giving of the mortgage was not an event that would necessarily or even naturally happen, but a mere expectation, that did not put the defendant upon its inquiry.

Upon both principle and authority we think that in this action, with the pleadings as they now are, the parol agreement established upon the trial can have no effect either as a part of the policy or as notice to the defendant.

It follows that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to abide the event.

FOLLETT, P. J., and MARTIN, J., concurred.

Judgment and order reversed, and a new trial granted upon the exceptions, with costs to abide the event.