The questions in this case arise upon a bill of exceptions. The only point which it seems to me material to notice is the ruling of the judge, that the description in the policy, of the premises containing the property insured, was not a warranty that the building was occupied as a storehouse only. The insurance was "$2000 on plaintiffs' stock as rope manufacturers, their own or held by them in trust or on commission, contained in the brick building with tin roof, occupied as a storehouse, situated on the northerly side of and about forty-two feet distant from the ropewalk at Bushwick, L.I." I know of no principle of construction applicable to written agreements which will permit us to hold a stipulation not to be a warranty in a fire policy, which we should hold to be a warranty in a marine policy. None of the cases in this state deny the identity of the rule. Ever sinceFowler v. The Ætna Ins. Co. (6 Cow. 673, and 7 Wend. 270), it has been conceded, and in the latter case is stated in terms. Sutherland, J., speaking of the earlier decision says: The well established principle in marine insurance, that a warranty is in the nature of a condition precedent, and must be fulfilled or performed by the insured before performance can be enforced against the insurer, we hold to be equally applicable to fire as to marine policies. We know of no case or principle which would authorize a different rule of construction in the one case from that which the same terms had uniformly received in the other. Since those cases the contest has been whether the warranties contained in the body *Page 373 
of policies have been complied with, and whether statements not in the body of the policy but referred to in different ways were thereby constituted warranties.
As to what constitutes a warranty in a contract of insurance, the rule is well stated by Sherman, J., in Wood v. TheHartford Fire Ins. Co. (13 Conn. 544): "Any statement or description, on the face of the policy, which relates to the risk is a warranty." In the case before us, the identity of the building which contained the property insured was distinctly ascertained by other facts of the description, and the terms "occupied as a storehouse" are not only in themselves fitly chosen to express a fact relating to the risk, but can not be regarded as employed for any other purpose. The warranty is in terms, that the building was occupied as a storehouse. According to O'Neil v. The Buffalo Ins. Co. (3 Coms. 122), this relates to the date of the policy and does not impose any obligation that such occupation should be continued during the continuance of the risk. In point of fact, at the time when the policy was executed, the building was occupied in part for the purpose of storing hemp and in part for the purpose of preparing the hemp to be spun by machinery into rope yarn and of spinning it. This was not occasional, but was the legitimate use to which the building was applied. It is contended on the part of the plaintiffs, that the warranty is complied with because it was partly occupied as a storehouse, and that in order to make the warranty large enough to exclude another but partial use negative words were necessary, as, for instance, occupied for a storehouse "only." We think this position is not well founded. It would be strange indeed if a term which, like occupied, in its own meaning exclusive, needed any further qualification to give it effect. Occupied as a storehouse, necessarily imports not occupied for any other purpose. None of the cases to which we are referred hold any different doctrine. Colby v. Baltimore EquitableSociety (1 Harris Gill, 295), was not a case of warranty at all. The question was whether in the absence of any stipulation, the insured might repair his house and look to the insurers for any damage by fire happening in consequence of such repairs, notwithstanding *Page 374 
the change of risk thus produced; and the court held the insurers liable. In Burritt v. Saratoga Fire Co. (5 Hill, 188), the insured was required by the conditions of insurance to state the relative situation as to other buildings of the building insured, and its distance from each if less than ten rods. He answered this by mentioning five buildings as standing within less than ten rods. There was another building within ten rods, and Bronson, J., says: "I find it difficult to resist the conclusion that the plaintiff has agreed that there were no other buildings within ten rods." I am strongly inclined to the opinion that there was a warranty;" but as the point was not necessary to the determination of the case it was not decided.
In Gates v. Madison Co. Ins. Co. (2 Coms. 44), the inquiry was "How bounded — distance from other buildings if less than ten rods?" The answer stated that such and such buildings were the nearest in different directions, but did not say that there were no others within ten rods." Jones, J., delivered the opinion of the court, that taking the inquiry and answer together, they were not to be understood as amounting to a warranty or affirmation that there were no other buildings within ten rods, but only that those named were the nearest, and upon that ground the judgment below (3 Barb. 73) was reversed. In this case Burritt v. Saratoga Ins. Co. and Jennings v.Chenango Ins. Co. (2 Den. 75), were examined and they were distinguished from the case then under discussion upon the ground that the inquiry of the insurers in each case called for all buildings within ten rods, and also that by the "conditions of insurance" any misrepresentation or concealment in the application should render the policy of no effect," which in effect the judge says was equivalent to a warranty. In Shaw v.Roberts (6 Ad. El. 75), the description in the policy was "on a granary and a kiln for drying corn for use." On one occasion the owner allowed oak bark, accidentally wetted, to be dried in the kiln gratuitously. The fire was caused by drying the bark. Lord Denman in pronouncing judgment, after mentioningDobson v. Sotheby (1 Moo. M. 90), to the same point, says "No clause in this policy amounts to *Page 375 
an express warranty that nothing but corn should ever be dried in the kiln." In Dobson v. Sotheby, the premises required tarring, and a fire was lighted inside and a tar barrel brought into the building for that purpose. By a servant's negligence the tar boiled over and fired the building. It was contended that lighting a fire within the building was a contravention of the terms of the policy, which required that no fire should be kept in buildings insured, and that the tar barrel came within the term hazardous goods and so avoided the policy. Lord Tenterden held that the provisions of the policy were to be understood as only forbidding the habitual use of fire and the ordinary deposit of hazardous goods, not their introduction for a temporary purpose connected with the occupation of the building.
Catlin v. Springfield Ins. Co. (1 Sumn. 434), holds that the words "at present occupied as a dwelling house, but to be occupied hereafter as a tavern," do not constitute a warranty that the house should during the continuance of the risk be constantly occupied as a tavern, and the insurers were held liable though the house at the time of the fire had ceased to be occupied at all. In Billings v. Tolland Ins. Co. (20 Conn. 139), the policy stated that "all the above barns are used for hay, straw, grain unthrashed, stabling and shelter, including one used in part as a barn and in part as a cider and threshing mill." On the day before the night of the fire the plaintiff had put about two bushels of lime and six or eight pails of water in a tub in one of the barns for the purpose of preparing the lime to roll seed wheat in it. He had also been having his house painted and the painter had mixed his paints in the same room, and at the time of the fire, there were in it an oil barrel containing about a gallon of oil, a keg of white lead and a pot with about a pint of mixed paint. It was claimed that upon these facts the warranty in the policy was broken, but the court charged the jury that if the barn and cider mill were only put to the common uses of such buildings the policy remained in force: that a single act or so, which did not belong to the ordinary, common and appropriate use of the buildings, would not change their nature nor prevent a recovery unless such acts were fraudulent *Page 376 
or grossly careless, and if the latter were also the cause of the loss. The court hold that at most the expressions in the policy are a warranty that the buildings were when insured such as they are described in the policy, and intimate a doubt whether the language of the policy is not to be regarded as description merely and not warranty. On the other point of referring toDobson v. Sotheby and Shaw v. Roberts, as sustaining the plaintiffs' claim, they say that they are called upon to examine whether they can be sustained on principle, because the acts done by the plaintiff were not a departure from the ordinary use of such buildings. Delonguemare v. Traders' Ins. Co. (2 Hall,
602), holds that the description of the room alleged to have been misappropriated for a carpenter's work place, not being contained in the policy, does not amount to a warranty. I have thus examined all the cases to which we have been referred as decisive that the expressions in this policy do not amount to a warranty that the building burned was occupied as a storehouse, and not otherwise, when the policy was effected, and not one of them even favors that view of the question. We entertain no doubt that this is the true interpretation of the contract, and as the court below refused so to instruct the jury, the judgment must be reversed and a new trial ordered.
RUGGLES, Ch. J., and GARDINER, JEWETT, WATSON and EDMONDS, JJ., concurred.
WELLES, J., read an opinion in favor of affirming the judgment of the Superior court. The following is the portion of it relating to the question upon the warranty.
The insurance was on the plaintiffs' "stock as a rope manufacturer, c., contained in the brick building with tin roof occupied as a storehouse situated on the northerly side of and about forty-two feet from the ropewalk at Bushwick, L.I." It is contended that this amounted to a warranty on the part of the plaintiffs that the building in which the property insured was situated, was a store house strictly and simply, and that it was used and was and should be occupied as such and for no other *Page 377 
purpose. But it seems to me quite clear that the clause referred to did not constitute a warranty to the extent contended for. In a subsequent portion of the policy it is provided that in case the buildings in question should at any time after the making and during the time the policy would otherwise continue in force, be appropriated, applied or used to or for the purpose of carrying on or exercising therein any trade, business or vocation denominated hazardous or extra hazardous, or specified in the memorandum of special rates, c., then and from thenceforth, and so long as the same should be so appropriated, applied or used, the policy should cease and be of no force or effect. The parties therefore settled the question by stipulation as to the uses to which the building might be appropriated, expressly agreeing what should be prohibited and leaving the plaintiffs at liberty, as I think, to use the building for any other purposes provided the risk was not thereby increased. If the building at the time of the loss, was occupied or used by the plaintiff for any of the purposes enumerated in the terms and conditions annexed to the policy denominated hazardous, extra hazardous or specially hazardous, it would avoid the policy. Under the head of "specially hazardous" is mentioned the business of "ropemakers," and the defendants contend that the evidence shows the condition in that respect to have been violated by the plaintiff. The building contained four stories; the basement and story next above were used for storing hemp and nothing else. The third story was used for a jenny-house where hemp was spun into yarn for the purpose of being manufactured into ropes, and the fourth story or attic was used for hackling the hemp and preparing it for the jennies. Did that constitute ropemaking or carrying on the trade of ropemakers? It seems to me it did not. The yarn might be spun there and sent any where else to be manufactured into ropes. It was never in fact made into ropes in that building, but was uniformly sent to the plaintiffs' rope walks near by to be thus manufactured. This was a distinct business, as really so as was the raising and gathering of the hemp; or as manufacturing shoes and boots *Page 378 
would be a distinct business from tanning and manufacturing leather. Evidence of usage was given on this question which was fairly submitted to the jury, and the propriety of their verdict upon the evidence can not be reviewed by this court. I think the judgment should be affirmed.
Judgment reversed and new trial ordered.