EDWIN  PITCHER,  Respondent,  *v.*  MICHAEL  HENNESSEY,
Appellant.

Defendant agreed to run plaintiff's boat from Oswego to Martinsburgh; "risk of navigation assumed" by plaintiff.  Defendant was prevented from performing by the fact that the boat was too large to pass through the locks on the Black River canal.  *Held*, that the term "risks of navigation," as used in this agreement, had a broader signification than "perils of navigation," and that plaintiff assumed all the risks attendant upon the navigation through the canal which were beyond the control of defendant, including the risk in question.

Statement of case.

Defendant alleged, in his answer, that by the verbal agreement between the parties, in pursuance of which the written contract was intended to be drawn, it was understood that the risk, as to the practicability of the boat passing through the locks, was to be, and it was understood by them was, assumed by the plaintiff, and asked to have the written contract reformed to correspond with the agreement, should such correction become necessary. The court below decided that the words in the contract did not include this risk. *Held,* that, with this construction, the answer sufficiently showed a mutual mistake, and that defendant was entitled under it to introduce evidence as to the original agreement.

Where parties, to carry out their contract, agree to use an instrument which, by their mistake of the law, will not effectuate their intention, equity will not reform the instrument or substitute another; but where parties intending to reduce a parol agreement to writing, and because they are ignorant of the force of language, and misunderstand the meaning of the terms used, make a contract different from that designed, equity will grant relief by reforming the instrument and compelling the parties to execute and perform their agreement as they made it. It matters not whether such a mistake be called one of law or of fact.

An equitable defence of this nature can be litigated upon a jury trial.

(Argued May 20, 1871; decided January term, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial district, affirming judgment in favor of plaintiff entered upon a verdict. Action to recover damages for alleged breach of contract. The facts sufficiently appear in the opinion.

*J. R. Swan, Jr.,* for the appellant. Defendant's agreement " to run " the boat did not make him liable as common carrier. (2 C. & H. Notes, 1387; Story on Bailments, §§ 457, 495 ; 3 Wend., 158 ; 2 Cow., 204.) As employee he was only liable for misconduct or neglect. (Story on Agency, §§ 85, 118, 193 to 197, 208, 217, 237.) He could limit his liability by any agreement they saw fit to make. (2 Com., 204, 209.) Evidence of the conversations, prior to the written agreement, was improperly excluded. (*Blossom* v. *Griffin,* 3 Ker., 569 ; *Renard* v. *Sampson,* 12 N. Y., 561 ; *McCullock* v. *Gerard,* 4 Wash., 289 ; *Morvald* v. *Lord Londesborough,* 2 Ellis & B., 307 ; 1 Greenleaf Ev., § 262 ; *Dodge* v. *Gardiner,* 31 N. Y., 239 ; *Spencer* v. *Babcock,* 22 Barb., 326 ; *Almgren* v.

*Dutilth,* 5 N. Y., 28 ; *Birch* v. *Depuyster,* 2 Eng. C. L., 210 ; *Hinneman* v. *Rosenback,* 39 N. Y., 118 ; *Thomas* v. *Tenscott,* 53 Barb., 200 ; *Hutchins* v. *Hibbard,* 34 N. Y., 24 ; *Waterman* v. *Johnson,* 13 Pick., 261 ; *Walrath* v. *Thompson,* 4 Hill, 200 ; 18 N. Y., 502, 508, 509.) Defendant's answer presented a case entitling him to equitable relief. (Willard's Eq., 73 ; 3 Ker., 542 ; 16 How., 32 ; *Dobson* v. *Pierce,* 12 N. Y., 156 ; *Bartlett* v. *Judd,* 21 id., 200 ; 14 id., 85 ; 12 id., 247 ; 15 id., 374, 378 ; 25 id., 625.)

*Waterman & Hunt* for the respondent. The contract imposed upon defendant the duty of taking the boat to Martinsburgh. He is bound to make it good, notwithstanding an unavoidable delay. (Allyn, 26 ; *Shuebrick* v. *Salmon,* 3 Brenow, 1637 ; *Bullock* v. *Dommitt,* 6 T. R., 650 ; *Brecknock Co.* v. *Pritchard,* 6 id., 650 ; *Hadley* v. *Clark,* 8 id., 259 ; *Hand* v. *Boynes,* 4 Whart., 204 ; Angell on Car., § 294 ; Chitty on Con., 737 ; 2 Par. on Con., 1184 ; *Beebee* v. *Johnson,* 19 Wend., 500 ; *Tompkins* v. *Dudley,* 25 N. Y., 252 ; *Harmony* v. *Bingham,* 2 Ker., 99, 107, 115 ; *Baker* v. *Johnson,* 2 Rob., 570.) The difficulty encountered was not a "risk of navigation." (1 Greenleaf Ev., § 278 ; *Hand* v. *Boyne,* 4 Whar., 204 ; *Atwood* v. *R. Trans. Co.,* 9 Watts, 87 ; 5 Yerger, 72 ; Angell on Car., § 168 ; *Williams* v. *Bronson,* 1 Murphy, 417 ; *Johnson* v. *Friar,* 4 Yerger, 48 ; 3 Kent, 300 ; 1 Phil. on Ins., 635 ; 2 Sumner, 567 ; 5 Watts, 87 ; Abb. on Ship., 5 Am. ed., 470 ; 2 Sumner, 202 ; *Redpath* v. *Vaughn,* 52 Bar., 496 ; 2 Arnold on Ins., 796 ; *Crosby* v. *Fitch,* 12 Conn., 419.) The offer to show a prior parol contract was inadmissible. (2 C. and H. Notes, 1466, note 984 ; *Filkins* v. *Wyland,* 24 N. Y., 338 ; *Van Ostrand* v. *Reed,* 1 Wend., 424 ; *Mumford* v. *McPherson,* 1 J., 414 ; *Niles* v. *Culver,* 8 Barb., 205 ; *Renard* v. *Sampson,* 12 N. Y., 561 ; *Hovey* v. *A. M. Ins. Co.,* 2 Duer, 554 ; *Fitzhugh* v. *Wyman,* 5 Seld., 559 ; *Curtiss* v. *Howell,* 39 N. Y., 210 ; *Simmons* v. *Law,* 8 Bos., 213.) The contract could only be reformed in equity. (*Gillespie* v. *Morn,* 2 J. Ch., 585.) A contract can only be reformed for

fraud or mistake. (*Burton* v. *Sackett*, 3 How., 358; *Jarvis* v. *Palmer*, 11 Paige, 650; *Coles* v. *Browne*, 10 id, 525; *Wemple* v. *Stewart*, 22 Bar., 154; *Lamoreaux* v. *A. M. Ins. Co.*, 3 Duer, 680.) The answer contained no sufficient allegation of mistake or surprise. (*Wemple* v. *Stewart*, 22 Barb., 164; 1 Story Eq., §§ 152, 155, 156, 157; 2 J. Ch., 1596; 10 Paige, 525; 1 Hop., 124; 29 Barb., 595; 17 J., 373; 11 Paige, 658.) Without these allegations it was insufficient. (1 Hop., 124; 3 How., 358; 22 Barb., 154; 11 Paige, 658.)

EARL, C. The plaintiff purchased 3,000 bushels of wheat in Oswego, and he could get no one, neither the defendant nor any one else, to freight it for him. For the purpose, therefore, of securing the transportation of his wheat, he made an agreement with the defendant to purchase his boat for the sum of $1,800, and the defendant agreed to load the wheat on the boat and run the boat and transport the wheat to Martinsburgh. The sale of the boat and the contract to load and run her were all one entire agreement, the consideration of which, on the part of the plaintiff, was the $1,800 to be paid by him.

The plaintiff, evidently, would not have bought the boat unless the defendant had agreed to run her and carry the wheat; and the defendant would not have agreed to carry the wheat unless the plaintiff had bought the boat. This agreement was reduced to writing in two separate instruments, drawn and executed at the same time and place, one of which was a mere bill of sale signed by the defendant, transferring the boat and her appurtenances, and the other was signed by both parties and was as follows:

"Michael Hennessey is to run boat T. Matthews, this day sold to Edwin Pitcher, of Martinsburgh, Lewis county, to the warehouse of said Pitcher on the Black river, in Martinsburgh loaded, at his, said Hennessey's, expense, except the tolls and insurance, which said Pitcher is to pay. Said boat

to run there with ordinary dispatch and to start immediately. Risk of navigation assumed by said Pitcher.

" M. HENNESSEY.
"EDWIN PITCHER.

" Dated OSWEGO, *Nov.* 22, 1864."

These two instruments are to be construed together, precisely as if they were embodied in one.

By the agreement, as thus reduced to writing, the plaintiff became the owner of the boat, and the defendant agreed to take on a cargo and run her for the plaintiff to Martinsburgh; and this he agreed to do absolutely, unless prevented by some " risk of navigation." He was prevented because the boat was too large to pass the locks on the Black River canal with her cargo, and the first question to be determined is whether the risk of passing the locks was a "risk of navigation." The learned judge who wrote the opinion of the General Term held that these words had a fixed legal signification, and meant the same as perils of the sea, or perils of navigation. These latter terms are held to cover losses or damage, occasioned by stress of weather, winds, waves, lightning, tempest, rocks, sands, and other extraordinary causes which no human care or foresight could guard against or prevent. (Story on Contracts, § 166; 2 Parsons on Mar. Law, 219; Angell on Car., § 168), and very likely they would not cover this peril. But there is no case holding that " risk of navigation " means the same thing as "perils of navigation," and there is no authority that I have been able to find, defining or fixing the meaning of this term. Hence we are to construe these words in the connection in which they are used, applying the ·ordinary canons of construction. We are to consider the circumstances and condition of the parties, and the objects they had in view, and thus ascertain, as well as we can, what they meant by these words. Both parties were ignorant of the precise size of the locks, and both undoubtedly supposed that the boat could pass through the locks. The plaintiff owned the boat and cargo; and the defendant was to run the

boat with the cargo to Martinsburgh. The defendant was unwilling to bear the risks which were beyond his control, and were incident to navigation of the canal, and these risks the plaintiff was willing to assume. If the boat and cargo were lost without the fault of the defendant, the loss was to fall upon the plaintiff. If the defendant was prevented from reaching Martinsburgh with the boat and cargo, by the freezing of the canal, or any other unforeseen or unavoidable peril of navigation, he was to be excused. He was to be excused if the canal should give away, or a lock should break without his fault. And yet, can we hold that he assumed the risk that the canal or locks were of sufficient size for his boat? Taking the relation and situation of the parties into view, I think that it is clear that the defendant meant only to assume all the risks occasioned by the negligence and misconduct of himself and his servants; and that the plaintiff meant to assume all the risks, attending upon the navigation through the canal, which were beyond the control of the defendant.

The plain, ordinary meaning of the language used admits of this construction, and it seems to me to be in accordance with the presumed intention of the parties. Hence I am of the opinion that the court erred in holding that the defendant had, and that the plaintiff had not, by the terms of the agreement, assumed the risk in question.

But if I am wrong in this conclusion, then I think the court erred in not allowing proof for the reformation of the contract. On the trial the defendant claimed that, by the terms of the written agreement, the risk in question was assumed by the plaintiff; and that if this was not the true construction of the written agreement, then it did not express the intention of the parties, and should be reformed. After the court had held that this risk under the written contract was not assumed by the plaintiff, and rested upon the defendant, the defendant; (1) for the purpose of procuring a reformation of the contract; and (2) to explain any ambiguity there might be upon the face of said contract, and the meaning of the words "risks of navigation," as understood by the parties, offered

to prove " conversations which took place between the plaintiff and defendant before the execution of the written contract between the parties which has been given in evidence. That in such conversations the defendant desired the plaintiff to furnish men and teams at Rome to assist in getting boat and cargo to Martinsburgh, where plaintiff wanted the wheat. The defendant told the plaintiff he knew nothing of the Black River canal or the size of its locks, and inquired of Mr. Pitcher if he knew the size of the locks, and said to him that he, Hennessey, would take no risk as to the length of the locks or the freezing up of the canal, and that plaintiff said he would take those risks."

The counsel for the plaintiff objected to this evidence, on the ground " that it was incompetent and immaterial, and that all conversations, prior to said contract, were merged in the written agreement; and that there was no ambiguity upon the face of the contract which required explanation; that such testimony was incompetent and immaterial for the purpose of reforming the contract; and that defendant's answer did not present a case, or contain the allegations necessary for the reformation of said contract." The court overruled the offer and excluded the evidence, and held and decided (1) that there was no ambiguity in the language of the contract which admitted of or required explanation. (2) That all communications and verbal agreements between the parties, prior to the execution of the written contract between them in relation to the subject-matter thereof, were merged in the written contract, and could not be proved to contradict or vary the same, or give it a meaning beyond its plain and obvious tenor. (3) That the testimony was inadmissible, for the purpose of reforming the contract, on the ground that no case was presented by defendant's answer for a reformation of the contract. It does not allege the facts upon which such reformation could be made. The judge further remarked that, independent of the pleadings, the reformation of a contract was a matter of equitable jurisdiction, and could not come up

before the jury. To each of which rulings and decisions of the court the defendant excepted.

The court clearly erred in holding that the equitable defence or counterclaim, set up by the defendant, could not be tried in this action. That it could be, is too thoroughly settled to admit of further dispute. (*The New York Ice Company* v. *The North-western Ins. Co.*, 21 How., 296; *Dobson* v. *Pearce*, 12 N. Y., 156; *Phillip* v. *Gorham*, 17 id., 270; *Bartlett* v. *Judd*, 21 id., 200; *Latin* v. *McCarty*, 41 id., 107.)

Hence if this equitable defence was sufficiently set up in the answer, it should have been tried and determined by the court; and the next question to be considered is, whether the answer was sufficient to authorize a reformation of the contract, and I cannot doubt that it was. It avers, "that by the verbal agreement between the said plaintiff and defendant, in relation to the delivery of said boat and cargo, at Martinsburgh, aforesaid, which preceded the execution of said written contract, and in pursuance of, and in conformity with which said verbal agreement, the said written contract was, as this defendant believes and avers, by both of said parties intended to be, and understood to have been drawn, this defendant was not to assume or take any risk in respect to the size of the said canal boat, as compared with the size and capacity of the locks on the Black River canal through which the said boat would be obliged to pass on the route to Martinsburgh aforesaid, or in respect to the practicability of passing the said canal boat through said locks, but, on the contrary, such risk, it was understood by both of said parties, should be, and was understood by them to have been, assumed by the said plaintiff, in and by the terms of the said written contract for the delivery of said boat at Martinsburgh aforesaid," and prays that the written contract "be corrected and reformed by inserting therein a clause or provision that the risk of the impracticability of passing the said boat and cargo through the locks of the Black River canal be assumed by the plaintiff, should such correction become necessary to attain justice between the parties." The prayer for relief is

sufficient.   It indicates with sufficient certainty the correction or reformation desired, and I am unable to see why the facts alleged as the ground for the relief prayed for are not also sufficient.   They are, in substance, 1. That the parties made a parol agreement, by which the defendant was not, and the plaintiff was, to assume the risk in question.   2. That both parties intended this agreement should be embodied in the written contract.   3. That they both understood it was so embodied.   4. That the contract was so drawn that the plaintiff assumed only the risk of navigation, and this the court below held did not include this risk.   It is true that the answer does not, in so many words, aver any mistake; but the facts alleged clearly show a mutual mistake, and point out with entire certainty in what the mistake consisted.   No one could doubt, from the allegations contained in the answer, the ground upon which the reformation of the contract was claimed; and the court could see, from the allegations in the answer, if they were proved precisely as made, how the contract was to be reformed.   What more could be needed to answer any rule of pleading?   We have then a case, as made by the answer, where a mutual mistake was made in reducing the parol agreement to writing and in signing the written contract.   In such a case equity will conform the written instrument to the parol agreement which it was intended to embody.   Story, in his Equity Jurisprudence, section 115, says:   "Where an instrument is drawn and executed, which professes or is intended to carry into execution an agreement previously entered into, but which, by mistake of the draftsman, either as to fact or to law, does not fulfill that intention, or violates it, equity will correct the mistake, so as to produce a conformity to the instrument."   And this language was taken from the learned opinion of Mr. Justice WASHINGTON, in *Hunt* v. *Rousmaniere's Adm'rs* (1 Peters, 13).

Parties to an agreement may be mistaken as to some material fact connected therewith, which formed the consideration thereof or inducement thereto, on the one side or the other;

or they may simply make a mistake in reducing their agreement to writing. In the former case, before the agreement can be reformed, it must be shown that the mistake is one of fact, and mutual; in the latter case it may be a mistake of the draftsman, or one party only, and it may be a mistake of law or of fact. Equity interferes, in such a case, to compel the parties to execute the agreement which they have actually made. Sometimes it happens that parties agree, as in the case above cited from Peters, to carry out their agreement by an instrument which, by their mistake of the law, will not effectuate their intention. In such a case equity will not reform the instrument, or substitute another instrument which will, in law, give effect to their intention, because they adopted and agreed upon the particular instrument, and equity will not compel them to execute an agreement which they never agreed to execute, and thus make an agreement for them. But in this case the parties intended, according to the answer, to reduce their parol agreement to writing, and to embody it in the instrument; and either because they or their draftsman did not understand the force of language, or because some language which they intended should have been inserted in the instrument was omitted by mistake, their intention was not carried into effect, and the instrument failed to embody their agreement.

It is claimed on the part of the plaintiff that if the mistake occurred because both parties misunderstood the meaning of the terms "risk of navigation," both parties believing that these terms would include the risk in question, then no reformation of the contract can be had. This claim is not well founded. When parties have made an agreement, and there is no allegation of any mistake in it, and in reducing it to writing, they, by mistake, either because they did not understand the meaning of the words used, or their legal effect, failed to embody their intention in the instrument, equity will grant relief by reforming the instrument, and compelling the parties to execute and perform their agreement as they made it; and it matters not whether such a

mistake be called one of law or of fact. (*Oliver* v. *The Mutual Commercial Ins. Co.*, 2 Curtis, 277.)

Hence I conclude that the learned judge at the circuit erred in excluding proof of the alleged mistake, and in holding that the equitable defence could not be litigated at the trial. I therefore favor a reversal of the judgments, and a new trial, costs to abide event.

All concur.

Judgment reversed.