DENNIS MAHER, Respondent, v. THE HIBERNIA INSURANCE COMPANY, Appellant.

67    283
117    460
67    283
122    263
67    283
135    189

Where the complaint in an action upon a policy of fire insurance, sets forth facts showing that the parties were mistaken as to the effect of the language used, the averments are sufficient to authorize a reformation of the contract, although there is no direct allegation of a mistake of fact.

Although a party insured accepts a policy with knowledge of the language used in describing the property insured, if, at the time, he points out a mistake therein, but is prevented from having the same corrected, or is thrown off his guard and dissuaded therefrom, by the acts or declarations of the insurer, he may show the mistake in an action on the policy; and the insurer is estopped from setting up the letter of the contract in bar of the action, and from claiming that the situation of the property does not agree therewith.

Where the parties to a contract, through a misconception as to the mean-

ing and effect of terms when used in such a contract, use terms which, failing to express their intention, do express a meaning different from that intended, proof of the facts will make a case for a reformation of the contract; and this, although they knew what words were employed and their ordinary meaning.

A policy of fire insurance upon plaintiff's building, described it as "occupied as a dwelling." A portion of the lower story was occupied as a grocery, and the residue of the house as a dwelling. In an action upon the policy it was alleged, and evidence was given and received under objection on the trial, showing that plaintiff and the local agent of the insurer, who filled out and issued the policy, knew at the time how the house was occupied; that they both intended to insure it, as it was actually occupied, and both thought the terms used in the description in the policy would properly designate the occupation; that plaintiff, doubting whether the intention had been well carried out, called the attention of the agent to the erroneous description, and was assured by him that it made no difference, that the words used were apt and ample to express their meaning and intention; also, that the secretary and general agent of the insurer, with knowledge of the description in the policy, inspected [in person the property insured and pronounced the risk a good one. No express allegation of a mistake was contained in the complaint. *Held,* that the evidence was properly received and was sufficient to authorize a reformation of the contract, which was proper under the pleadings.

Also, *held,* that a reformation of the policy did not render nugatory, or affect the proofs of loss furnished.

The policy contained a condition that any fraud or "false swearing" would forfeit all claims under it. Plaintiff, in his proofs of loss, stated under oath that the building was occupied as a dwelling-house, and for no other purpose. *Held,* that the term "false swearing" meant a verified false assertion fitted and likely to, or which does deceive; and that as defendant, through its agents and secretary knew the facts, and as the words used, when charged with the meaning given to them by the parties, were not untrue, as between them, there was no breach of the condition.

The judgment was simply for the amount of loss, without, in express terms adjudicating a reformation of the policy. *Held,* immaterial.

(Argued October 6, 1876; decided November 14, 1876.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, affirming a judgment in favor of plaintiff entered upon a verdict and affirming an order denying a motion for a new trial. (Reported below, 6 Hun, 358.)

This action was upon a policy of fire insurance issued by defendant to plaintiff insuring, among other property, " his double-frame building occupied as a dwelling." One of the conditions attached to the policy was to the effect that if there appear any " fraud or false swearing " in the proofs of loss the insured should forfeit all claims under the policy.

The complaint, after describing the policy, alleged that at the time of, and before the issuing thereof, the principal story of the double-frame building mentioned therein was occupied by Mrs. Elizabeth Collette, the front room of which was used by her as a grocery; that the defendant's agent, residing in the city, made a preliminary survey and examination of said building, and particularly of the grocery part occupied and used as aforesaid, before making said contract of insurance and the delivery of said policy; that plaintiff called the attention of the agent thereto, before and at the time of the making and issuing of said policy, inquiring whether the fact that a grocery was so kept should not be expressed and stated in the policy, to which the agent replied : no, it is not necessary to mention it; so small a matter as that is never mentioned in the policy; and so the same was not expressed in said policy; and it averred that the omission to make mention of such fact was the act of defendant not of plaintiff, and asked for a reformation of the policy to conform to the agreement and for judgment for amount of loss.

There was no written application and the policy was filled up by defendant's local agent. Plaintiff was permitted to prove on the trial, under objection and exception, the fact so alleged in the complaint, also that plaintiff returned the policy to defendant's agent and desired the same to be corrected by stating the fact that a grocery was kept in the building, and that the agent corrected the policy in some other matters to which his attention was called, but declined to correct it in this respect for the reasons above stated, saying that it made no difference, that it was all right as it was; also that after the issuing of the policy defendant's secretary and general agent examined the property in company with plaintiff, after having

seen and read the policy, and pronounced it a good risk and acceptable.

At the close of the evidence defendant's counsel moved to strike out this evidence, on the ground that it was inadmissible to vary the terms of the contract, which motion was denied and said counsel duly excepted.

In the proofs of loss verified by plaintiff it was stated that the building was occupied as a dwelling-house "and for no other purpose whatever."

The defendant's counsel moved for a nonsuit upon the grounds: First. That a portion of the property insured is described in the policy as a dwelling, when in fact it was occupied as a grocery. Second. Upon the ground that the proof of loss sworn to by the plaintiff falsely states that the premises in question being a double-framed house were occupied as a dwelling, and for that purpose only, and that under the conditions of the policy any fraud or false swearing in the proof of loss should forfeit the policy. Third. Upon the ground that the proof does not make out a case for reforming the policy, it being shown that the plaintiff knew what was in it, and there is no proof of any mistake of fact. Fourth. That no preliminary proofs were given to the company upon the basis of the policy reformed as is claimed by the plaintiff in this case.

The motion was denied and defendant's counsel duly excepted. The jury found a verdict for the amount of the loss, and judgment was perfected thereon without any statement as to a reformation of the policy.

*Samuel Hand* for the appellant. The statement in the policy as to occupancy of the building was a warranty that it was so occupied. (*Wall* v. *E. R. Ins. Co.*, 3 Seld., 370; *Chase* v. *Ham. Ins. Co.*, 20 N. Y., 52; *Parmalee* v. *Hoff. Ins. Co.*, 54 id., 196; *Lappin* v. *Charter Oak Ins. Co.*, 58 Barb., 325, 348; *Sarsfield* v. *Met. Ins. Co.*, 42 How., 97; 61 Barb., 419; *Brice* v. *Lorillard Ins. Co.*, 55 N. Y., 240.) The court erred in receiving evidence as to what occurred between plaintiff and the agent Kernan. (42 How., 101; *Plumb* v. *Catt.*

*Ins. Co.*, 18 N. Y., 392; *Brown* v. *Catt. Ins. Co.*, id., 385.)
No case was proved for reforming the contract. (*Brice* v.
*Lorillard Ins. Co.*, 55 N. Y., 240; *Mead* v. *Westchester Ins.
Co.*, 2 N. Y. Week. Dig., 323.)   The fact that the policy was
written by defendant's agent does not change its legal effect
or relieve plaintiff from the consequences of the breach of
warranty. (*Rohrbach* v. *Ger. F. Ins. Co.*, 62 N. Y., 407;
*Alexander* v. *Ger. F. Ins. Co.*, N. Y. Week. Dig., 175; 42 How.,
97; *Appleby* v. *Astor F. Ins. Co.*, 54 N. Y., 253.)   The
policy was forfeited under the clause in reference to false
swearing in the preliminary proofs. (*Ferriss* v. *N. A. F.
Ins. Co.*, 1 Hill, 71, 74; *Howard* v. *City F. Ins. Co.*, 4 Den.,
502, 508.)   Plaintiff was bound by the proofs of loss fur-
nished and cannot show a different state of facts on the trial.
(*Irving* v. *Excel. F. Ins. Co.*, 1 Bosw., 507; *Underwood* v.
*Farmers' Ins. Co.*, 57 N. Y., 500; *O'Reilly* v. *Guardian Ins.
Co.*, 60 id., 169.)

*A. J. Colvin* for the respondent.   Evidence of the transac-
tions of defendant's agent in the taking and perfecting of the
policy, in answer to questions put to plaintiff as a witness, was
proper. (*Un. Mut. L. Ins. Co.* v. *Wilkinson*, 11 Am. L. J.
[N. S.], 485; 13 Wal., 225.)   Omissions or errors of state-
ment in describing the property must be imputed to defend-
ant, and it is estopped from setting them up in avoidance of
the contract. (*Rowley* v. *Empire Ins. Co.*, 36 N. Y., 550;
*Bodine* v. *Exch. F. Ins. Co.*, 51 id., 121; *Owens* v. *Hol. Pur.
Ins. Co.*, 56 id., 565; *Plumb* v. *Cat. Ins. Co.*, 18 id., 394;
*Un. Mut. L. Ins. Co.* v. *Wilkinson*, 11 Am. L. Reg. [N. S.],
485; 13 Wal., 394.)   There was no warranty by plaintiff that
the description was correct. (*Justice* v. *Lang*, 52 N. Y., 323;
56 id., 565, 573; 18 id., 392; 13 Wal., 222; 36 N. Y., 550;
56 id., 565, 573; *Parker* v. *Amazon Ins. Co.*, 34 Wis., 363;
*Masten* v. *Madison Ins. Co.* 11 Barb., 624; *Metz* v. *Lans. F.
Ins. Co.*, 13 Alb. L. J., 228.)   Defendant is estopped from
alleging error of plaintiff in using the description in the
policy in the proofs of loss.   (*Taylor* v. *R. Wms. Ins. Co.*, 51

N. H., 50; *Burnstead* v. *Div. Mut. Ins. Co.*, 12 id., 97; *Vos* v. *Robinson*, 9 J. R., 198; *Ætna Ins. Co.* v. *Tyler*, 16 Wend., 385; *How.* v. *City F. Ins. Co.*, 4 Den., 502; *Ferriss* v. *N. A. Ins. Co.*, 1 Hill, 71.) The evidence was ample for a reformation of the contract. (*Bryce* v. *Lorillard Ins. Co.*, 55 N. Y., 240; *Meads* v. *Westchester F. Ins. Co.*, 2 N. Y. Week. Dig., 323.)

FOLGER, J. The case was given to the jury without exception to the charge, in any matter which is presented to this court on the points made here. The legal positions laid down to the jury must be taken as the law of the case. They found for the plaintiff upon the questions of fact submitted to them, and the defendant is bound by the verdict and the judgment thereon, unless during the trial there was some error made by the court, and which is brought up by the exceptions taken.

It is not to be denied that this phrase in a policy of fire insurance, viz., "*occupied as a dwelling*," is ordinarily a warranty by the insured that the building so described, and on which the risk is taken, is in fact, at the time of issuing the policy, a building occupied only as a dwelling-house. (*Alexander* v. *Germania Fire Ins. Co.*, Ms., Ct. of Appeals,* citing *Wall* v. *East River Ins. Co.*, 7 N. Y., 370; *Parmalee* v. *Hoffman Fire Ins. Co.*, 54 id., 193.) If the plaintiff is to be held to the policy in this case as it is written, he has warranted that the building insured, was at the time of insurance occupied as a dwelling-house; and in that case, the facts undisputed, show that there has been a breach of the warranty.

It is claimed by the plaintiff that there is evidence in the case, which relieves him from the pressure of this phrase in the contract, and from the consequences. It was shown upon the trial, to the satisfaction of the jury, that the plaintiff and the local agent of the defendants, when the latter filled out and issued the policy, knew that the building in question was, in fact, occupied otherwise than only as a dwelling house; that they both meant to insure the building in that other state

* 66 N. Y., 464.

of occupation; that they both thought, that the terms used in the policy in describing the building, were such as would designate it in that state of occupation; that it was their intention to use terms of that purport, and that after the policy was issued, the plaintiff doubting whether that intention had been well carried out, and expressing that doubt to the local agent, was assured by him that the phraseology used was apt and ample to express their meaning and intention. It was upon this evidence that the case was given to the jury, and upon it they found for the plaintiff under the charge of the court.

The defendants contend that this evidence was not admissible, and should have been stricken out on the motion made by them to that end. If this action is to be tested as one purely at common law, it may be that this evidence could not be admitted to vary the contract. If the language used was ambiguous, or if it was used in some particular sense where susceptible of different meanings, parol evidence might have been proper to show what was the meaning of the parties in its use; but where the terms employed have a settled legal construction, they may not be contradicted therein by parol evidence. (*Pindar* v. *Resolute Fire Ins. Co.*, 47 N. Y., 114.) The plaintiff having taken the contract in the form of words in which it now appears, cannot, in an action at law vary its purport by parol evidence and prove that it does not mean what it says.

But it was not necessarily in this view alone that the evidence was offered and might have been received. In the case of *Pindar* v. *Resolute Fire Insurance Company* (*supra*), it was said : If the insured was not content to submit to those conditions he should have rejected the policy. In effect this is saying that the insured must make himself master of the form and contents of his policy when he receives it; and if it is not to his liking, he must effect a change, either in that policy, or by getting one from another underwriter. Now if the insured is disposed, and makes effort to do this, and is prevented, or thrown off his guard and dissuaded therefrom, by the act or

declaration of the insurer, is not the latter estopped from setting up in bar of an action on the policy, the letter of the contract, and that the situation of the property does not agree therewith, and from claiming the strictly legal consequences therefrom? It was in evidence that, after the issuing of the policy to the plaintiff, he called the attention of the local agent to the erroneous description of the building insured, and was told that it made no difference. So, likewise, it was in evidence that the general agent and secretary of the defendant, with a knowledge of the description of the building in the policy, inspected in person the property insured and pronounced the risk taken a good one. This evidence was material and competent, as tending to show, that the plaintiff was not careless; was not thoughtlessly satisfied with the terms of the policy, but sought an emendation thereof, and was baulked of a successful pursuit thereof by the action and declaration of the defendants through their agents and officers. Hence the admission of the evidence upon the trial was not erroneous; nor was it erroneous to retain it in the case against the motion of the defendant to strike it out.

Nor was it erroneous to receive the evidence, if it tended to make a case in equity, for a reformation of the policy. It was objected on the trial, that there was no allegation in the pleadings, that there was a mistake of fact, and that hence and because the plaintiff knew what the policy said when he received it, there was no case made for a reformation of the contract. The pleading of the plaintiff is inartificial in its statements, but it avers the existence of facts substantially as they afterwards appeared in evidence. There is no specific allegation of a mistake of fact; but it avers that which shows that the parties were mistaken as to the effect of the language which they used; and this is an averment of matter upon which a reformation of a contract may be based. (*Pitcher* v. *Hennessy*, 48 N. Y., 415.)

It is enough to authorize the reformation of a contract, if it appears that, through the mistake of both parties to it, the intentions of neither have been expressed in it. Now if a

court· if equity had a right to find from the evidence, that both the insurer and the insured meant to insure the very building that was burned; and meant to put in the policy no expression as to the character or situation of it, different from the facts; but, by a misconception as to the meaning and effect of language, have used terms which do express that which they did not intend to express, and which did fail to express that which they did intend to express; such evidence does make a case for a reformation of the policy, so as to conform it to the intentions and purposes of the parties. (*Many* v. *Beekman Iron. Co.*, 9 Paige, 188; *Pitcher* v. *Hennessey*, 48 N. Y., 415; *McCall* v. *Ins. Co.*, MS. Ct. of App., Sept., 1876.*) They meant to insure the building which was burned; they meant to correctly describe it; they used words which they thought did correctly describe it. It turns out that in this they were honestly mistaken. It is in the power of a court of equity, on being satisfied of that, to so reform and rewrite the contract, as that it shall state truly what the parties in fact agreed to, and what they intended to write out as their agreement. It is true, that they knew what words were used in the instrument. Doubtless they knew the ordinary meaning of the words. The evidence, however, authorized a finding that they mistakenly supposed that those words, when used in a contract for insurance, were proper terms in which to describe the building intended by the plaintiff, and accepted by the agent of the defendant, as the subject of that contract. It resulted, therefore, from that mistake, that the contract failed to express the fact as agreed upon between them. The complaint in the action alleges facts, upon which to base a prayer for judgment, of a reformation of the policy, and for a recovery upon the policy as reformed, and makes that prayer. The evidence was admissible in this view of the case. (*Van Tuyl* v. *Westchester Fire Ins. Co.*, 55 N. Y., 657; *Cone* v. *The Niagara Fire Ins. Co.*, 60 id., 619.) It matters not, in this case, that the judgment contains no formal clause of reformation of the

* 66 N. Y., 505.

contract. The point we are now considering, is as to the admissibility of the evidence under the issue made by the pleadings.

An action may be brought for a reformation of a contract, and for a recovery at the same time upon the contract when reformed (see *New York Ice Co.* v. *N. W. Ins. Co.*, 23 N. Y., 357), and it is not irregular to try such action before a judge and jury. (*Pitcher* v. *Hennessey, supra.*)

When the plaintiff furnished to the defendant the preliminary proofs of loss, he asserted therein that the building was occupied as a dwelling-house and for no other purpose whatever. He made oath thereto. The ninth condition attached to the policy, is, among other things, that if there appear any "fraud or false swearing," the insured shall forfeit all claims under it. It is plain from the testimony, that the matter thus asserted was not correct in fact. But was the making this statement, and the verification of it by oath, "*false swearing,*" within the meaning of that phrase, as used in the policy? It is used there in association with the word "*fraud,*" and must have a similar interpretation. The latter is any trick or artifice by one, to induce another to fall into, or remain in an error, to his harm. The former is a verified false assertion, which does deceive, or is fitted and likely to deceive, the one to whom it is made. But one may not be deceived by an assertion which, to his own knowledge, is false. The defendants, when the preliminary proofs were served upon them, had knowledge of the character and situation of the building. Their agents and their secretary knew; and that was knowledge in the defendants. They knew, too, that by the form of words used in the policy, the insurer and the insured meant, not a building occupied exclusively as a dwelling-house, but one for the most or main part so used, and at the same time used in part as a grocery and saloon. It is not to be seen how the insurer was deceived or likely to be deceived, by the use of a form of words in the proofs of loss, applied to a building described by that same form of words in the policy. The words in the policy, when charged with the meaning given to them by the parties using

them, were not untrue as between them, though to the mind of others than the parties, they may not have conveyed a true description of the building. How can we say that the same words in the proofs of loss, used by the same parties, in reference to the same subject, were between them, false; though others, on reading them, would not get a true notion?

Another point is made by the defendant, viz.: That if the policy is taken as reformed, and made by a change of its terms, to express the real contract between the parties, then there have been no proofs of loss furnished by the plaintiff This is not tenable. It is rather plausible than real. The plaintiff did furnish to the defendant a paper which, it must be conceded, was in some sort a proof of loss. It was furnished under the contract for insurance, which was really entered into between the parties. A reformation of the form of the contract would not change the contract. It would only make it in written shape what it was in fact, and what each party knew it to be in fact. When the plaintiff gave to the defendant his proofs of loss, he gave, and it received, under that contract, which was the contract as they knew it always to have been. The subsequent change of the written form of the contract, as it did not make another contract in fact, so it did not make another contract requiring new or further proofs of loss. Knowing what the contract really was, the defendant received the proof of loss under it, and, if it was defective in form or matter, should have returned it, pointing out the defect. Not having done so the defendant may not now object to it.

This disposes of all the points raised by the defendants in this court, and of all the exceptions taken upon the trial and here relied upon. The case was not given to the jury, in precisely the view of it which we have taken. But there was no exception by the defendants to the charge. If there was error in it, it is not brought to our attention.

The defendants having failed to show any error by the points made here upon the exceptions taken on the trial, the judgment appealed from should be affirmed.

All concur, except RAPALLO, J., not voting; ALLEN, J., in result, and ANDREWS, J., on ground that evidence was proper to reform the contract.

Judgment affirmed.