MARY MARSH, APPELLANT, v. WILLIAM R. McNAIR, RESPONDENT.

*Action to reform a written agreement on the ground of mutual mistake—when it may be maintained although, by a mistake involving questions of law, the instrument fails to express the contract made.*

Upon the trial of this action, brought to have an assignment of a life insurance policy, absolute in terms, reformed so as to represent the assignment, as made, as a collateral security, it appeared that, in 1869, two policies were issued by one Gibson, as the agent of an insurance company, one upon the life of Charles H. Marsh, for the benefit of his mother, the plaintiff, and the other upon the life of John R. Marsh, for the benefit of his brother, the said Charles; that, on May 22, 1872, the plaintiff assigned the first policy and joined with her two sons in assigning the second policy to Gibson, who was a banker, residing at Lima; the latter assignment expressing that it was made in consideration of crediting C. H. Marsh, at Gibson's bank, with $353.72, and making certain advances for him, amounting in all to $500.

With a view of obtaining the security Gibson went to Avon, where the other parties resided, met John R. and Charles H. Marsh, and made with them an agreement for the assignment to him of the policies, as security for such liabilities of Charles, which amounted to $500. Hosmer, a lawyer, who was present, after stating that, although the assignment was intended as collateral security, it must be in form absolute, drew the assignment, which was executed by Charles H. and John R. Marsh, and was taken by Hosmer and presented to the plaintiff, who refused to execute it. Thereafter, at the request of the other parties, made in the presence of Gibson, Hosmer again requested the plaintiff to execute it, and then represented to her that the assignment was only as collateral security for the amount mentioned in it, and that to render it effectual as such security it must be absolute in terms, because the insurance company would not allow or recognize it if made otherwise.

*Held,* that the court erred in striking out all the evidence given by the plaintiff as to the oral arrangement, and in dismissing the complaint, as the evidence was such as to present a question of fact for the determination of the trial court, and sufficient, as furnished by the record before the court, to support a conclusion for relief in favor of the plaintiff.

That the evidence in this case might justify the conclusion that the execution of the assignment was induced by misrepresentation.

When, in the process of reducing an agreement to writing, the instrument, by reason of a mistake, fails to express the contract made by the parties, although it may, to some extent, involve mistake of law, equity may grant relief by way of reformation.

APPEAL from a judgment, entered on a decision of the court at the Livingston Special Term, dismissing the complaint.

This is a review of the third trial of an action brought for the purpose of obtaining a reformation of an assignment of a life insurance policy absolute in terms, so as to represent the assignment as made as collateral security, with a view to the recovery of the amount of the proceeds of the policy, in excess of the sum to secure which the assignment was made.

In 1869, a policy was issued by the National Life Insurance Company of the United States upon the life of Charles H. Marsh for the benefit of his mother, the plaintiff, for $5,000. And about the same time a policy was issued by the same company upon the life of John R. Marsh, for the benefit of his brother, the said Charles H. Marsh, for a like sum.

On May 23, 1872, the plaintiff made an assignment of the first mentioned policy to Chauncey W. Gibson. And at the same time she joined with Charles H. and John R. Marsh in an instrument of assignment to Gibson of both policies. The latter assignment expressed that it was made in consideration of crediting C. H. Marsh, at Gibson's bank, $353.72, and making certain advances for him amounting all together to $500.

Charles H. Marsh died in September, 1873. And in December, 1873, Gibson made a general assignment for the benefit of his creditors to the defendant. The plaintiff caused to be tendered to the defendant the amount advanced by Gibson, with interest, and demanded a surrender of the policy to her, which was refused. And afterward the defendant collected of the insurance company the amount of the policy on the life of Charles H. Marsh. The plaintiff gave evidence of an oral arrangement alleged to have been made with Gibson, pursuant to which the assigments were made, and of the circumstances attending their execution. When the plaintiff rested all that evidence was stricken out by the court on the defendant's motion. The plaintiff excepted. And thereupon the court dismissed the complaint, to which the plaintiff's counsel also excepted.

*J. B. Adams*, for the appellant.

*E. A. Nash*, for the respondent.

BRADLEY, J.:

On the review of the first trial it was held that parol evidence was admissible to show that the assignment of the policy, although

absolute in form, was intended as security. And the judgment was reversed and a new trial ordered. (25 Hun, 314.) The second trial resulted in a judgment for the plaintiff, which was affirmed by the General Term and reversed by the Court of Appeals. (99 N. Y., 174.) The latter court held that the two instruments executed by the plaintiff, construed as they must be together, contained elements of an agreement more than that of a mere assignment of the policy, and that in the absence of allegations of mutual mistake or fraud, plaintiff was concluded by their terms, and oral evidence was incompetent to show that the assignment was made as security merely.

The plaintiff thereupon amended her complaint by alleging that it was drawn and executed, absolute in its form, "under a mutual mistake of the parties thereto, and this plaintiff was induced to execute it in its absolute form by the false and mistaken representation then and there made to her by the agent of the said Gibson, that it was necessary that the assignment should be absolute in form in order to render it effectual as a collateral security," etc. The evidence introduced upon the trial tended to show that the oral understanding between Gibson and Charles H. and John R. Marsh, pursuant to which the assignment was made, was that it should be made as security merely for liabilities of Charles H. Marsh to him of about $500. In fact, all the evidence given upon the trial was in harmony in that respect. The question is whether there was any evidence which gave competency to that fact and permitted the trial court, within the legal rule applicable to such cases, to find that the assignment was made and taken as collateral security, because the case was not considered upon the merits, and the dismissal of the complaint was in the nature of a nonsuit. (*Van Derlip* v. *Keyser* 68 N. Y., 443; *Stark* v. *Soule*, 9 N. Y. S. Rep., 555.)

The mistake, as such, which permits oral evidence to modify or reform a written agreement must be mutual, and in some sense have relation to facts, for, as a general rule, a mere mistake of its legal effect affords no such relief. That is to say, if the written agreement is made as the parties intended, a mistake of its legal import furnishes no ground for the introduction of oral evidence to qualify its terms. (*Shotwell* v. *Murray*, 1 Johns. Ch., 512; *Arthur* v. *Arthur*, 10 Barb., 9; *Champlin* v. *Laytin*, 18 Wend., 407; *Bryce*

v. *Lorillard Ins. Co.*, 55 N. Y., 240; *Wilson* v. *Deen*, 74 id., 531, 534.) But when in the process of reducing an agreement to writing the instrument by reason of a mistake fails to express the contract made by the parties, although it may to some extent involve mistake of law, equity may grant relief by way of reformation. In such case the mistake is not of the legal effect, but a mistake relating to the effect of the language used, which has prevented the expression in some respect, in the written instrument, of the terms of the contract as made. (2 Pomeroy's Eq. Jur., § 845; *Pitcher* v. *Hennessey*, 48 N. Y., 415; *Lanning* v. *Carpenter*, id., 408; *Maher* v. *Hibernia Ins. Co.*, 67 id., 283; *Canedy* v. *Marcy*, 13 Gray, 373.) In no case will reformation be given on the ground of mistake, unless it be so done as to represent the agreement as understood when made by all the parties to it having an interest in the subject-matter involved in the determination. It is quite evident that the plaintiff was advised of the terms of the instruments of assignment when she executed them, and the evidence permits the conclusion that her mistake as to the legal effect of the assignment was produced by the information and advice given by the person who presented it to her for execution, that to render it effectual as collateral security it was necessary that its terms should be absolute. The plaintiff was not present when the negotiation which resulted in the assignment was had. The assignee, Gibson, was a banker residing at Lima, N. Y. He was also the agent of the insurance company referred to, and as such issued the two policies. With a view to obtaining the security he went to Avon, where the other parties resided, and there met John R. and Charles H. Marsh, and made with them the agreement to assign to him the policies as security for such liabilities of Charles to him, amounting to $500. Hosmer, a lawyer, was present, and at the request of those parties drew the papers, but before doing so he said to them, that although the assignment was intended as collateral security, it must be in form absolute, and drew it accordingly. It was then executed by Charles and John R. Marsh. And Hosmer was then requested to go to the plaintiff's house and get her to sign it. He applied to her and she declined to execute the instrument, and after returning to the other parties and informing them of her refusal, he, at the request of some one of them, repeated his application to her for its execution. He then

represented to her that the assignment was only as collateral security for the amount mentioned in it, and that to render it effectual as such security it must be absolute in terms, because the insurance company would not allow or recognize it if otherwise than so made. It may have been found upon the evidence as a fact that the parties understood from the information so received that the absolute terms were essential to the transfer of the policies as security; that such feature was peculiar to life policies, and that they believed, when they made it, that the assignment as made might be effectual as security merely. In this view, there was a mutual mistake of fact which excluded from the written assignment the provision expressing the purpose for which it was made. And while there was no mistake of the legal import of the contract as actually made, a mistake of law as well as of fact prevented the insertion in the written instrument of the contract as so made, all of which resulted from the advice and act of the lawyer and scrivener who transacted the business for the parties other than the plaintiff.

While in view of the rule which has generally been declared in this State, the question may not be free from doubt, we are inclined to think that such state of facts was sufficient to support equitable relief. (Story's Eq. Jur., § 115; Pomeroy's Eq. Jur., § 845; *Monne* v. *Ayer*, 20 J. & S., 139; *Hunt* v. *Rousmaniere*, 1 Peters, 1, 13; *Maher* v. *Hibernia Ins. Co.*, 67 N. Y., 283: *Meyer* v. *Lathrop*, 73 id., 315; *Stone* v. *Godfrey*, 5 De G. M. & G., 76; *Broughton* v. *Hutt*, 3 D. G. & J., 500; *Griffith* v. *Townley*, 69 Mo., 13; 33 Am. R., 476.) It is difficult to lay down any rigid rule which will embrace all the cases that come within equitable cognizance for relief of the character of that in question. While to justify it the mistake must be mutual, and the mere mistake of the legal import of a written instrument is not sufficient, there are many other considerations dependent upon deductions from evidence which may permit relief. They may arise from imposition, misrepresentation, concealment, undue influence, misplaced confidence, surprise or other inequitable conduct in the transaction. It will be observed that upon the evidence the conclusion was permitted that the sons of the plaintiff had not nor did either of them have any authority to represent the plaintiff in the making of the contract to assign

the policy in question for any purpose, that the attorney Hosmer represented and acted for those three parties in what he did, and in no sense represented the plaintiff; that when he came to her with the assignment and stated to her that it was, in fact, and had the effect of collateral security, he still represented them, and that by such representation she was induced to understand that the character and legal effect of the assignment executed by her was as such security for the sum mentioned. And although it may be that the attorney was requested by one of the Marsh parties to get the signature of the plaintiff to the paper, it was done in the presence and with the knowledge of Gibson, and in aid of the common purpose of the parties there, and in the work for which the attorney was apparently engaged by them. It would, therefore, seem that the plaintiff may not have executed the instrument voluntarily upon her own judgment of its character, but upon the representation so made to her in that respect. In that view, although Gibson may have believed that the legal effect of the assignment was such as to effectuate the understanding that it should be as security merely, the conclusion is justified that the execution of it by the plaintiff was the result of misrepresentation for which he was in some degree chargeable, and for that reason the evidence presented a question of fact for consideration upon the merits in support of the plaintiff's claim for relief. (*Tyson* v. *Passmore*, 2 Penn. St., 122.) Then, in view of the fact that the policies by their terms recognized the right to transfer and hold them as security, and that Gibson was the agent of the insurance company, and as such countersigned and issued them, the inference was permitted that he knew of such provision when the agreement and assignment were made, which might also lead to the conclusion that when in his presence the attorney was requested to advise the plaintiff that the assignment was as security only, he permitted the information to be given her that such was the nature and effect of the assignment. This might be treated as a concealment from her of such provision of the policies of which the plaintiff says she had no knowledge. And that by that means she was induced to rely upon the representation and execute to him the instrument, which in equity might be characterized as fraud and as such furnish ground for relief. (*Cooke* v. *Nathan*, 16 Barb., 342; *Waring* v. *Somborn*, 82 N. Y., 604; *Welles* v. *Yates*,

44 id., 525 ; *Kilmer* v. *Smith*, 77 id., 226.) For the purpose of this review it is only necessary to determine whether there was any evidence which required the consideration of the case on the merits. In reaching the conclusion upon that proposition in the affirmative, we do not intend to express any opinion of the result which the trial court should reach, but only that the evidence was such as to present a question of fact for the determination of the trial court, and sufficient as furnished by the record here to support a conclusion for relief in favor of the plaintiff.

When the case was in the Court of Appeals, the question was whether oral evidence was competent to show that the assignment was intended as a security, and having held that it was not upon the issues presented by the pleadings, the court also decided that, inasmuch as there was no finding of mutual mistake or fraud, the judgment was not supported. In that view, the sufficiency of the evidence to permit such finding in support of suitable allegations of the complaint did not necessarily arise for consideration on that review. And, as we understand it, that question was not there determined.

If these views are correct, the judgment should be reversed and a new trial granted, costs to abide the event.

BARKER, P. J., and HAIGHT, J., concurred.

Judgment reversed, and new trial ordered, costs to abide event.