FRANCES MILLSPAUGH, Temporary Administratrix, etc., of
THOMAS H. MILLSPAUGH, Deceased, and Others, Respond-
ents, v. WILLIAM F. CASSEDY, as Trustee, and Others, Appel-
lants, Impleaded with WILLIAM B. SANXAY, as Administrator,
etc., of EDMUND SANXAY, Deceased, and THE HIGGINSON
MANUFACTURING COMPANY, Defendants.

Second Department, March 12, 1920.

Corporation — jurisdiction of court of equity to reform certificate
incorporating business corporation — failure of certificate to
embody by-law denying right of preferred stockholders to vote —
holders of common stock and representatives of such holders
may maintain suit — evidence not establishing laches.

A court of equity has jurisdiction to reform the articles incorporating a
business corporation so as to deny to the holders of preferred stock the right
to vote at elections of directors, it appearing that such was the agreement
of the incorporators and that upon the incorporation of the company and
before stock was actually issued a by-law was adopted which provided that
holders of preferred stock should not be entitled to vote, and where although
such provision was not inserted in the certificate of incorporation by the
attorney who drew the same, the holders of such preferred stock had never
voted or asserted any right to vote thereon.

Since the amendment to section 20 of the former General Corporation Law
made in 1901 and now embodied in section 23 of the General Corporation
Law, a corporation may deny the preferred stockholders the right to vote.

The old rule that a court of equity cannot give relief from a mistake as to the
law has been to some extent modified, and relief may be given by equity
from errors made by lawyers in drafting legal papers, which result in a
mutual mistake as to the intent of the parties.

The plaintiffs being holders and representatives of deceased holders of
common stock have a standing to maintain the suit aforesaid as they are
not mere volunteers but seek to enforce vested established interests.

Neither can the plaintiffs be charged with laches when there was no objection
to the exclusive right of the holders of common stock to control elections
until the election of directors in 1918, twenty years after the incorporation.

APPEAL by the defendants, William F. Cassedy, as trustee,
and others, from a judgment of the Supreme Court in favor of
the plaintiffs, entered in the office of the clerk of the county of
Rockland on the 24th day of October, 1918, upon the decision
of the court rendered after a trial at the Rockland County
Special Term.

The judgment appealed from decreed that the certificate of

incorporation of the defendant corporation be so amended as to provide that the preferred stock shall not be entitled to any vote at stockholders' meetings, and directing that a meeting of all the stockholders be held at which they shall vote for the amendment as decreed, and that proper certificates shall be executed and filed accordingly.

*Charles T. Payne* [*Walter P. Pfeiffer* and *Edgar G. Wandless* with him on the brief], for the appellants.

*R. H. Barnett,* for the respondents.

Kelly, J.:

This suit was commenced in March, 1918, and was in equity to reform the articles of incorporation of the Higginson Manufacturing Company, a business corporation organized in November, 1898. There is no material dispute as to the facts, the appellants contending that the court was without power to decree reformation at the suit of the plaintiffs; that if a mistake was made in omitting the limitations upon the voting power of the preferred stock, which, however, the appellants do not concede, it was a mistake of law from the effects of which equity will not relieve; that the holders of the preferred stock cannot be deprived of their right to vote, and that the plaintiffs are barred from any relief by *laches* and the Statute of Limitations.

Upon the incorporation of the defendant company in 1898, and before any certificate of stock was actually issued, a by-law was adopted in the following words: " Preferred Stock: The preferred stock shall not be entitled to any vote at annual meetings or special meetings of the stockholders." This limitation was not in the certificate of incorporation, but for twenty years — from 1898 until immediately preceding the commencement of this action — it was recognized by the stockholders, and no holder of preferred stock voted or offered to vote thereon. The capital stock of the company was $250,000, divided into 2,500 shares, of which 500 represented preferred stock and 2,000 common stock. The learned trial judge has found as matter of fact upon evidence concerning which there is no substantial controversy, that it was the intention and purpose of the incorporators that the preferred

stock should have no voting power, that the sole voting power should be vested in the common stock of the company, and that the attorney who prepared the certificate of incorporation was advised of the intention of the incorporators and was directed to prepare the papers to effectuate such intention. He also finds that the attorney in attempting to carry out the direction of the incorporators prepared the by-law above set forth, but that he failed to insert the provision in the certificate of incorporation. The by-laws were unanimously adopted at the first meeting of the incorporators on January 16, 1899, held under the supervision of the attorney, and the trial judge finds that it was the intention of the attorney and the stockholders present at the meeting, representing all of the capital stock of the company, that the preferred stock should have no voting power. As matter of fact, found by the trial judge, the 500 shares of preferred stock as well as 850 shares of common stock were thereafter transferred to the attorney as trustee and stood in his name upon the books of the corporation for many years, during which he voted the common stock at corporate meetings but never attempted to vote the preferred stock prior to the annual meeting in January, 1918. At that meeting he, for the first time, claimed a right to vote the 500 shares of preferred stock, but the inspectors of election refused to receive the vote offered upon the preferred shares. He thereupon instituted proceedings under the General Corporation Law (§ 32) to set aside the election of directors and officers, whereupon the Millspaugh interests, owning 1,099 shares of common stock, practically all of the common stock aside from the 850 shares owned or controlled by the attorney trustee, began this action and obtained a preliminary injunction restraining the proceedings until the final determination of the action. During the twenty years preceding 1918 the active management of the corporation had been with Thomas H. Millspaugh, who had been an employee of and afterwards associated with Mr. Higginson, the founder of the corporation. Mr. Higginson, who owned or controlled all of the stock, died in 1909, leaving a will in which he bequeathed all of the capital stock in the corporation, preferred and common, to Millspaugh, who was appointed executor of his will. The stock, preferred and common, held by the attorney

as trustee for a son of the deceased Higginson, was trans-
ferred voluntarily by Millspaugh pursuant to a letter from
his former employer and associate Higginson, in which the
latter expressed the desire that Millspaugh should remain the
manager of the business. All these facts were found by the
learned trial judge and there is no serious dispute about
them.

The main question presented to the trial court and upon
this appeal concerns the power of a court of equity under
such circumstances to reform the certificate of incorporation.
We have been referred to no case in which this power has been
heretofore exercised, but the novelty of the exercise of equi-
table power is no reason for disaffirming it. All of the stock-
holders are before the court, and they represent the original
incorporators. The ownership of the corporation has remained
in Millspaugh and the attorney as trustee for the son of the
original founder and owner of the business since the death of
Mr. Higginson. In 1898 the son was a young man at college,
he had no business experience, nor does it appear that at any
time he has troubled himself with the affairs of the company,
which was engaged in the business of manufacturing plaster
at Newburgh, N. Y., and which under Millspaugh's direction
had prospered and was in sound financial condition.

The power to make by-laws limiting the voting power of
shares of corporate stock was early negatived in this State.
(*People ex rel. Israel* v. *Tibbets,* 4 Cow. 358.) The General
Corporation Law of 1892 (Gen. Laws, chap. 35 [Laws of 1892,
chap. 687], § 20) provided: "At every election of directors and
meeting of the members of any corporation, every member who
is not in default in the payment of his subscriptions upon his
stock or disqualified by the by-laws, shall be entitled to one vote,
if a non-stock corporation, and, if a stock corporation, to one
vote for every share of stock held by him for ten days immedi-
ately preceding the election or meeting." The phrase "dis-
qualified by the by-laws" was considered by the Attorney-
General in passing on a proposed certificate to incorporate the
Buffalo Building Loan and Investment Company which had
sought to divide the stock into classes, and excluded certain
classes from voting. The Attorney-General declared in an
official instruction to the Superintendent of Banks: "This

disqualification, it seems to me, refers to some failure on the part of a member to comply with the rules of the corporation, and would not be broad enough to include a general disfranchisement, such as is proposed by the certificate in question, which would restrict the right of voting to one of the three classes of members." (Opinions of Attorney-General, 1894, pp. 109, 110, 111.) On the interpretation of such statutes to be administered by the State officials, Judge BARTLETT said great weight should be given to the opinion of the Attorney-General advising the executive departments. (*People ex rel. Snyder* v. *Hylan,* 212 N. Y. 236, 240.)

In the following year, 1895, the General Corporation Law was amended, and it provided: " § 10. Limitation of powers.— No corporation shall possess or exercise any corporate powers not given by law, or not necessary to the exercise of the powers so given. The certificate of incorporation of any corporation may contain any provision for the regulation of the business and the conduct of the affairs of the corporation, and any limitation upon its powers, or upon the powers of its directors and stockholders, which does not exempt them from the performance of any obligation or the performance of any duty imposed by law." (Laws of 1895, chap. 672.)

This was the law when the Higginson Manufacturing Company was incorporated. At that time it was lawful to limit the•voting•power of the preferred stock as was here intended. Such restrictions and limitations have been since recognized and are not unusual in corporate organizations in this State. In 1901 the provision of section 20 of the General Corporation Law as to qualification of stockholders as voters was amended so as to declare the right to one vote for every share of stock, " Unless otherwise provided in the certificate of incorporation." (Laws of 1901, chap. 35.) This was re-enacted in 1909. (Gen. Corp. Law [Consol. Laws, chap. 23; Laws of 1909, chap. 28], § 23.) In that year the Secretary of State, who had refused to receive a certificate of incorporation containing limitations on- the voting power of preferred stock, was compelled by writ of mandamus to accept and file the · certificate. The order for the writ was affirmed and the court held: " Unless expressly forbidden by statute the certificate

incorporating a business corporation may divide the stock into common and preferred and deny to preferred stockholders the right to vote in consideration of the preference over the common stock." (*People ex rel. Browne* v. *Koenig,* 133 App. Div. 756.) So that for seventeen years, at least, prior to the annual meeting of 1918, the limitation on the voting power of preferred stock was part of the corporation law in this State, and such policy was expressly recognized in our statutes.

The omission of the learned attorney who prepared the certificate of incorporation in 1898 to insert therein the voting limitation contemplated and desired by all concerned, was an instance of mistake. Such mistake is evidenced not only by the by-law, but by twenty years' acquiescence. It was a case of mutual mistake as to the effect of the by-law which truly expressed the purpose of the incorporators. The mistake was in trusting to the by-law to give effect to the purpose. The learned trial judge made a finding which is embodied in the judgment that the original stockholders entered into a mutual contract that the preferred stock should not have voting rights and that the sole voting rights should exist in the common stock and that this contract bound the parties and their successors.

The learned counsel for the appellants insist that the omission of the restriction in the articles of incorporation was an error of law, not to be relieved by a court of equity. Their argument goes backward over fifty years to the early distinction that helped mistakes of fact but not of law — a difference based upon a misapplication of the maxim applicable to simple relations, "*Ignorantia juris neminem excusat.*" They also urge that such relief is something beyond ordinary equitable remedies, in that articles of incorporation are not such a contract as may receive the high remedy of reformation by courts of equity.

Lord Justice FRY in his treatise on Specific Performance (§ 800) says: "Recent decisions * * * have lessened if not destroyed the importance of the distinction between mistakes of fact and of law." (5th ed., p. 394. See Pom. Eq. Juris. [3d ed.] § 845.) In a case where by error lawyers made a deed that failed of its proper purpose, as it contained a relimitation of the uses, so as to raise a question of its effect on a will,

made in the meantime, the court corrected what was an error of law. Lord Justice TURNER said: " The very principle of this Court in correcting instruments is, that the parties are to be placed in the same situation as they would have stood in if the error to be corrected had not been committed, and, adopting this principle, the will must in this case be supported. * * * One view of this case, which appears to me to be decisive is, what answer could have been given to Mrs. Walker if she had come to this Court to have the instrument corrected? I apprehend that her right to this relief would have beer indisputable, and I think that her devisees have the same right " (*Walker* v. *Armstrong*, 8 De Gex, M. & G. [57 Eng. Ch.] 531, 544.)

In cases of a mutual mistake of the parties when an instrument in writing does not truly express their intention in framing the instrument, or in its legal effect, equity courts may look to the intended legal consequences, and are not confined to an inquiry what words ·were meant to be used. In *Pitcher* v. *Hennessey* (48 N. Y. 415), where parties used the words " risk of navigation," intending not to include risks of passing through canal locks, it was held that equity would reform the instrument, and compel the parties " to execute and perform their agreement as they made it; and it matters not whether such a mistake be called one of law or of fact." (Per EARL, C.) In *Hunt* v. *Rousmanier* (8 Wheat. 174) MARSHALL, Ch. J., concluded his judgment: " We find no case which we think precisely in point; and are unwilling, where the effect of the instrument is acknowledged to have been entirely misunderstood by both parties, to say· that a court of equity is incapable of affording relief." (p. 216.) (See, also, *Baird* v. *Erie R. R. Co.*, 210 N. Y. 225, 231, where a like mistake of law was relieved in equity.)

This brings us to the consideration of reforming the organic articles of incorporation. These really constitute an agreement, in which a certain publicity is given by the requirement for filing, recording and indexing both in the county clerk's office and in the office of the Secretary of State. (Gen. Corp. Law of 1892, § 5, as amd. by Laws of 1895, chap. 672, and Laws of 1902, chap. 285; Gen. Corp. Law of 1909, § 5, as amd. by Laws of 1913, chap. 479.) It is, however, tripartite.

Besides the signers, are the public, whose participation is fixed by statutes.

The rights and obligations as between common and preferred stock are peculiarly matters of agreement. Says Cook, of an issue of preferred stock: " It is undoubtedly legal, since there is no rule of public policy that forbids it, and it amounts only to a contract of the stockholders as to how they shall divide the profits among themselves." (1 Cook Corp. [7th ed.] § 268.) Even such a simple matter as the right on a transfer of stock to have a certificate issued early became a ground of equitable cognizance. (*Cushman* v. *Thayer Manufacturing Jewelry Co.*, 76 N. Y. 365.)

Here the right of one set of stockholders to vote, instead of the personal concern of a single shareholder, may involve the entire control of the corporation, by an abrupt shift of the management from the active operating interests to those whose secured income as a prior charge makes them less affected by economies of operation. Certainly equity should not hold its hand if this is a perversion of the original basis of stock issues.

The right to vote goes to preferred stockholders the same as to common stockholders " unless this right is expressly withheld from them by the terms under which the stock is issued." (Cook Corp. [7th ed.] § 269.) Much weight is given to continued acquiescence without objection in the matter of not voting the preferred stock.

As the principles of contract apply to the intercorporate relations in the classes of common and preferred stock, there is every reason why equitable relief should be granted as in other contract rights.

We cannot agree that plaintiffs are mere volunteers. They operate the plaster mills, and the estate of Thomas H. Millspaugh represents the control thereof since 1909. The doctrine of volunteers does not apply to such vested established interests.

Neither does it appear that plaintiffs' rights are subject to the defense of *laches*. No inkling of a murmur against this right of the common stock to control had appeared until this January election in 1918.

The appellants urge that there can be no contract right in a void and illegal by-law. But that is not a fair statement of the question. The parties here put a record of their undoubted

agreement into the wrong place, and the very fact of its having been misplaced is a sufficient ground to ask a court of equity to put it in the right place, where it can be validated through an amended certificate of incorporation.

Under the existing law, the absence of the provision in the articles of incorporation being discovered, all of the parties interested assenting, there would be no difficulty in correcting the certificate. An amended certificate might be filed to rectify the error. (Gen. Corp. Law of 1892, § 7; Gen. Corp. Law of 1909, § 7; Stock Corp. Law [Gen. Laws, chap. 36; Laws of 1892, chap. 688], § 32, as amd. by Laws of 1901, chap. 354, and Laws of 1905, chap. 751; Stock Corp. Law [Consol. Laws, chap. 59; Laws of 1909, chap. 61], § 18.) And the General Corporation Law (*supra*) contains this significant language: " The Supreme Court may, upon due cause shown, and proof made, and upon notice to the Attorney-General, and to such other persons as the court may direct, and upon such terms and conditions as it may impose, amend any certificate of incorporation which fails to express the true object and purpose of the corporation, so as to truly set forth such object· and· purpose." So, if all of the parties interested were not in accord, here is an express grant of power to the court to amend a certificate so as to truly set forth the lawful intentions of its organizers. In the case at bar every one interested is before the court. It is true that the Attorney-General has not been made a party, but it is impossible to perceive how any public interest is involved in the controversy. The power of the court to grant relief in case of errors and irregularities in corporate organizations has been frequently exercised. In *People ex rel. Columbia Co.* v. *O'Brien* (101 App. Div. 296) Mr. Justice CHASE, writing for the court, said: " Where a certificate is filed with the same name as that of an existing corporation, or where the name so nearly resembles that of the existing corporation as to be calculated to deceive, the action of the Secretary of State is not conclusive and the courts have frequently by a judgment in equity granted relief to a prior corporation aggrieved. (10 Cyc. 153; 7 Am. & Eng. Ency. of Law [2d ed.], 689; *Society of 1812* v. *Society of 1812*, 46 App. Div. 568; *Hygeia Water Ice Co.* v. *N. Y. Hygeia Ice Co.*, 140 N. Y. 94; *Higgins Co.* v. *Higgins Soap Co.*, 144 id. 462.) "

(See, also, *Lord* v. *Equitable Life Assurance Society*, 109 App. Div. 252.)

The opinion of the learned trial judge discusses the facts and resulting equities in greater detail. We concur with him in his conclusion that the attempted exercise of voting power by the preferred stockholder is clearly contrary to the purpose and intention of the original founder of the corporation, and of the incorporators and stockholders evidenced by their conduct of the corporate affairs for twenty years. The judgment registers the justice of the case, and although it may be a new exercise of equitable jurisdiction to rectify articles of incorporation, it is according to equity and good conscience and should be affirmed.

The judgment is, therefore, affirmed, with costs.

Present — JENKS, P. J., RICH, PUTNAM, KELLY and JAYCOX, JJ.

Judgment unanimously affirmed, with costs.