Cohh, J.
This action was brought by Henry Christal, a stockholder owning 44% of the voting stock of Edward Petry & Company, Inc., a New York corporation, to restrain defendant, Edward Petry, a holder of 51% of the voting stock from pro *552 ceeding with a plan initiated by Petry to increase the number of directors of the corporation from four to five. The complaint alleges an agreement between plaintiff and Petry to the effect that the board of directors of the corporation should at all times consist of four members; that Petry and plaintiff should have equal representation on the board of directors; that each at all times should have the right to nominate and elect two of the four directors, and that Petry and plaintiff were to have equal control over the management of the corporation.
The primary question presented on this appeal is as to whether there is a valid agreement which precludes Petry as holder of record of a majority of the voting stock from exercising his statutory right to effect an amendment to the certificate of incorporation so as to increase the number of directors from four to five and by that means to give him control over its management.
In 1932, Petry conceived the idea of establishing a business of representing radio stations for the purpose of obtaining advertising contracts for them. In the beginning Petry conducted this business in his own name and procured numerous contracts of employment from radio stations. Toward the end of the year Petry decided to accept plaintiff as a coadventurer. In January, 1933, the new enterprise was launched by Petry and plaintiff under the firm name of Edward Petry and Company. They filed a certificate of doing business under that name in the New York County Clerk’s office on January 19,1933. Neither Petry nor the plaintiff had available funds but Petry was able to borrow $1,000, which he personally was obligated to repay and which enabled the concern to function. That money, together with the contracts which Petry held with radio stations, constituted the sole assets of the business.
In March, 1933, Petry and plaintiff, upon consulting their attorney, decided to incorporate. All assets were transferred to Edward Petry & Company, Inc., the new corporation, which on June 3,1933, issued 100 shares of its capital stock as follows: fifty-one shares to Petry, forty-four shares to plaintiff and five shares to one Edward E. Voynow, who was the manager of the Chicago office and who received his stock when the company wRs organized in satisfaction of salary arrears owing by the firm. On that date Petry wrote plaintiff a letter agreeing to turn over to plaintiff one-half of the difference between the dividends declared on plaintiff’s 44% of the stock and the dividends declared on Petry’s 51%, and as of the same date Petry *553 as president of the company agreed by letter with Christal that the latter’s compensation should be “ exactly the same compensation that is paid to ” Petry or to his successor so long as Christal or members of his family continue to own 44% of the stock.
In February, 1934, the shares of the stock of the corporation were increased and reclassified, as a result of which, on May 2, 1934, 100 shares of Class A or voting stock of the corporation were issued, of which again fifty-one shares were issued to Petry, forty-four shares to plaintiff and five shares to Edward E. Voynow. At the same time there were issued 150 shares of nonvoting Class B stock, which was to entitle the holder to receive such dividends as voted by the board of directors. Fifty shares each were allotted to Petry, plaintiff and Voynow. Under this arrangement, they were thereafter to divide equally all dividends declared.
The corporation, by .Edward Petry, continued the employment contract with plaintiff by another writing dated May 2, 1934, providing in language practically identical with that contained in the letter of June 3, 1933, that compensation to be paid to plaintiff should be fixed by the board of directors with the understanding, however, that his compensation would be exactly the same as that paid to Petry, the president. Petry had been president since the incorporation and plaintiff had been its secretary and treasurer. On July 30, 1934, the- compensation provision contained in the employment agreement between plaintiff and the corporation was cancelled and a new written contract substituted. By the new arrangement it was provided that .the salary to be paid by the corporation to Petry as president should be a sum equal to that paid to plaintiff, plus 25%, but that in no event should the salary paid to Petry as president exceed the salary paid to plaintiff by more than $3,750 per annum.
There never was and is not now any contract for services between the corporation and Petry, though written contracts were always resorted to with respect to the employment by the corporation of plaintiff and the employment by the company of Voynow.
Plaintiff says that when their relationship began he and Petry had agreed that at all times each should have equal control over the management of the corporation but that upon Petry’s insistence 51% of the stock was issued to him because Petry suggested “ that it might be wise for the company, it might help him, [Petry] if he was to be able to own 51 percent of the stock of the corporation ”, but that such arrangement was not “ in any *554 way to affect the relationship between himself [Petry] and myself [Christal].” To carry into effect this arrangement, according to plaintiff, the attorney who drew up the certificate of incorporation caused it to provide for four directors and also had a similar provision inserted in the by-laws of the corporation. The by-laws contained a further provision for their amendment by an affirmative vote of 75% of the stockholders. However, no such limitation was contained in the corporate certificate. Cumulative voting was required under the by-laws which plaintiff asserts was adopted so as to keep control between Christal and Petry evenly balanced.
The business of the corporation had been highly successful and apparently over the years no question ever came up as to who was in control. However, difficulties have recently arisen between Petry and plaintiff with respect to policies of management. Petry thereupon undertook to exercise his rights as the owner of a majority of the voting stock of the corporation to increase the number of the directors from four to five so as to terminate the situation by which Christal, a minority stockholder, could exercise equal control with him. To accomplish his purpose Petry called a special meeting of the stockholders. Plaintiff then brought this action for an injunction to restrain Petry from amending the certificate of incorporation by increasing the number of directors and for a reformation thereof by having it contain a clause to the effect that the number of directors might be increased only by a 75% vote of the outstanding stockholders.
After a trial, a Eeferee designated by the parties to hear and determine the issues granted substantially all the relief sought by plaintiff.
While we have great respect for the well-considered report of the learned Eeferee who heard the testimony, our examination of the record in this case leads us to conclude that there was insufficient proof of an agreement between Petry and plaintiff such as is alleged in the complaint. If such an agreement had in fact been made it would seem that written evidence of it, signed by both parties, would be available. Every detail of arrangement between Petry and the plaintiff was always reduced to writing. Thus the first employment contract between plaintiff and the corporation, dated June 3,1933, and again the later employment contracts between plaintiff and the corporation dated respectively May 2, 1934, and July 30, 1934, were in writing. The letter of June 3, 1933, in which Petry wrote *555 to plaintiff evidencing Ms agreement to turn over one half of the difference between the dividends declared on 44% of the stock of the corporation and dividends declared on Petry’s 51% of the stock was reduced to a clear and unequivocal writing. The parties here wanted everytMng in writing. If there existed an agreement as alleged in the complaint that in spite of majority ownership of the voting stock by Petry, the board of directors should at all times consist of four members and that plaintiff and Petry should at all times have equal control of the corporation and that each should elect two of the directors, it is incomprehensible that such an arrangement would not have been properly recorded. It would have been a simple matter for the attorney who supervised the incorporation of the company to have effected between Petry and Christal equal ownership — if such had been the intention of plaintiff and defendant — to say nothing of Voynow’s right to be consulted in such an arrangement. Equal ownersMp was certainly not effectuated by the division of the voting stock — nor was equal control evidenced by any of the writings or in any other manner.
The evidence shows that the entire enterprise was Petry’s idea; that from the very beginning he was insistent on control; that as Petry testified plaintiff “ was a partner of mine from the beginmng, as far as dividing profits, but he was not a partner in the ownership of the business. It was my business.” When it came to forming a corporation Petry said imtially he offered to employ plaintiff and give him stock, but at all times he was to retain control. In conversations concerning the subsequent increase and reclassification of stock, Petry repeatedly stated that he would not give up any of his voting stock or his control of the corporation.
Plaintiff’s explanation of why Petry said he wanted 51% of the stock is most unconvincing. He says that Petry suggested it might be wise for the company and that it might help Mm (Petry) if he were to own 51% of the stock of the corporation. Plaintiff gave no testimony as to how it would help Petry to own 51% of the stock or how it would be wise for the company to show that Petry owned 51% of the stock. This weak testimony of plaintiff, contrasted with the forceful declarations by Petry that the business was his; and that he insisted upon 51% of the original issue of stock to maintain control and that later when there was a reclassification of stock, he again demanded 51% of the Class A or voting stock be issued to Mm, indicates quite conclusively that Petry was telling the truth. Significant too is the statement contained in the memorandum prepared *556 by the corporation’s then attorney in the year 1934 at the time of the reclassification as to the division of the Class A voting stock to be issued: “ Income to be equal but control as is.” Such was precisely the understanding of Petry as testified to by him — income to be equal but control to be 51% for Petry.
The testimony of Edward E. Voynow, who has owned 5% of the voting stock from the corporation’s inception and who was suggested as a director by plaintiff, fully sustains Petry’s claim on the issue of control of the corporation. Voynow is still a director and his family owns one third of the dividend paying stock. Voynow related that Petry in no uncertain terms told him that though he would give one third of the profits to Voynow, he, Petry, had control of the corporation, owned 51% of it and never intended to give up his control. It was following such conversation with Voynow late in 1933, that the dividend paying B stock was subsequently issued with an arrangement that Voynow, Petry and Christal, the plaintiff, should each receive fifty shares out of the total of 150. A short quotation from Voynow’s testimony in this connection is worthy of note:
“ I told them I was going on a cruise, and that that would be a fine Christmas present for me. We came back, I would say, around the 6th of January [1934]. I went to the New York Office and I said, ‘ Gentlemen, I think it is swell of you guys to make me a one-third partner. We are going to go along fine, and I am tickled to death to be part of it. ’
££ Petry said, ‘ We will make you a one-third partner in the earnings of the company, but you are not going to be a one-third partner in the control of the company, because I have a fifty-one per cent control of it, and I won’t give up any of mine. ’
££ And I said,£ I don’t care. Controlling the company doesn’t mean anything to me so long as we can share and share alike.’ ”
Petry calls attention to the fact that there was never any contract for services between himself and the corporation although written contracts were entered into with respect to employment by the corporation of plaintiff and Voynow. Obviously Petry felt it unnecessary to have an employment contract with a corporation which he controlled. It appears too that the agreement alleged in the complaint is inconsistent with contracts which Petry had with various radio stations and which he subsequently assigned to the corporation and which contracts were always available for inspection by Christal. For example, the contract with The Journal Company gave the radio station the right to cancel in the event that Edward Petry should *557 cease to have actual control and management of the corporation holding the contract. Plaintiff admitted knowing that the corporation had this contract.
The argument is advanced that because of the equal division of profits there is a legal presumption that plaintiff and Petry shared ownership equally in the original partnership. However, two people may be partners in the profits of a business but that does not necessarily mean that they are equal in ownership (Hillock v. Grape, 111 App. Div. 720; Conroy v. Campbell, 13 Jones & Sp. 326). The weight of the evidence here furnishes clear proof that Petry was the owner and rebuts any possible presumption which might be claimed to arise from the share in the profits. The two agreements made between Voynow and the partnership, the first of which was executed in January, 1933 and the second on February 24, 1933, on their face show that, with plaintiff’s acquiescence, they were entered into between Edward Petry of New York City, doing business under the name and style of Edward Petry and Company, and Edward Voynow, and that the ownership of the business was in Petry. In the certificate of incorporation itself it is specifically stated that one of the purposes for which the corporation was to be formed was to take over “ the business of representing radio stations in the solicitation and procurement of advertising, heretofore carried on in the City and State of New York by Edward Petry under the name and style of Edward Petry & Company”.
It is also worthy of note that the money by which the business of Edward Petry and Company was originally financed was money borrowed by Petry personally and which he was personally liable to repay.
We think that upon all the evidence the alleged agreement for equal corporate control is wholly inconsistent with the documentary evidence in this case and has not been established. Such an agreement would be the foundation of the relationship between the parties. If it actually existed it would have been evidenced by a clear and unambiguous writing and not by the complicated and wholly ineffective means which plaintiff claims was employed to accomplish the purpose.
Moreover, the statutory right of holders of a majority of voting stock to amend the certificate of incorporation so as to increase the number of directors is absolute unless restricted by some contrary provision in the certificate of incorporation or unless prohibited by unanimous written agreement of all the stockholders.
*558 Any by-law attempting to restrict such right is ineffectual and invalid. The Stock Corporation Law of this State (§ 5, subd. 7), provides that the certificate of incorporation of the corporation must state the number of directors. There is no such requirement with respect to by-laws. As between the certificate of incorporation and the by-laws, the certificate must control. “ The by-laws of course cannot override the statutes and hence if the by-laws conflict with the charter, the charter prevails.” (1 Cook on Corporations [8th ed.], p. 29; see, also, Parish v. New York Produce Exchange, 60 App. Div. 11, 17, affd. 169 N. Y. 34.) A restriction on the statutory right of a majority of the voting stockholders to increase the number of directors is valid provided it is contained in the certificate of incorporation itself. Such restriction cannot be validly imposed upon the majority of the stockholders by the by-laws of the corporation (Ripin v. U. S. Woven Label Co., 205 N. Y. 442, 448-449). In that case the court said: “ The distinction between authority to make a by-law and that to incorporate the agreement of the incorporators in the certificate of incorporation is marked. To uphold a by-law inconsistent with the statutory provision regulating the affairs of a corporation would allow a majority to invade the rights of a minority and to impose limitations on a stockholder to which he never gave assent, while to uphold the provisions of the certificate is merely to compel a party to live up to his agreement.”
Section 35 of the Stock Corporation Law declares that a stock corporation may effect a change to increase or reduce the number of directors by filing as therein provided an appropriate certificate indicating that such change has been authorized by votes of the holders of record of the majority of the shares.
The certificate of incorporation of this corporation provides in article seventh: “ The number of directors of the corporation shall be four * * *.”
In the absence of a provision in the certificate of incorporation requiring more than a bare majority to increase the number of the board of directors, Petry as owner and holder of the majority of its issued and outstanding voting stock had the right to vote his stock at a special meeting of the stockholders to increase the number of the board of directors to five. Upon such vote and the filing of the necessary certificate, the increase in the number of directors could be legally accomplished. Though the by-laws of the corporation provide in section 1 of article II that “ The affairs and business of this Corporation shall be managed by a *559 Board of Four (4) Directors ”, this provision is mere surplusage.
Plaintiff in seeking to enjoin Petry from increasing the number of directors relies upon the amendment provision of the by-laws which provides in section 1 of article VIII as follows: “ These By-Laws may be altered, amended, repealed or added to, by an affirmative vote of the stockholders representing sev: enty-five (75%) per centum of the whole voting capital stock, at an annual meeting or at a special meeting called for that purpose * * *.”
However, there are two other sections of the by-laws which are in direct conflict with this so-called amendment provision. Section 4 of article I declares: ‘ ‘ At all meetings of the stockholders all questions, the manner of deciding which is not specifically regulated by statute, shall be determined by a majority vote of the Stockholders * * *.” And section 10 of article II provides that any one or more of the directors may be removed, either with or without cause, at any time by vote of the stockholders holding a majority of the stock. (Italics supplied.)
From a reading of section 4 of article I and section 10 of article II of the by-laws, it would seem that stockholders have a right by a majority vote to increase the number of directors by an amendment to the certificate of incorporation. Quite apart from such an interpretation, the amendment provision of the by-laws as applied to the prospective increase in the number of directors is invalid.
Every corporation may of course make by-laws for the management of its business (General Corporation Law, § 14), but. such by-laws must not be inconsistent with law. Since the Stock Corporation Law (§35) provides that the number of directors of a corporation may be increased by the vote of the holders of record of the majority of the outstanding shares of the corporation entitled to vote, provision of the by-laws requiring 75% of the voting stock to increase the number of directors is void to that extent. This proposition of law is now firmly established (Katz v. H. & H. Manufacturing Co., 109 App. Div. 49, affd. 183 N. Y. 578).
It is apparent that the alleged agreement between Petry and plaintiff to the effect that the board of directors should “ at all times ” consist of four members and that Petry and the plaintiff should each have the right “ at all times ” to nominate and elect two of the directors, whether it be considered as expressed in a by-law of the corporation or considered merely as an agreement *560 between two of the three stockholders, is in violation of section 35 of the Stock Corporation Law which provides that a majority of the stock may increase the number of directors and, hence, is illegal and void.
Furthermore, the agreement alleged, even if in writing, would be invalid as it was not an unanimous agreement of all stockholders. Voynow was a 5% stockholder of the corporation from its very inception. He has always owned 5% of the voting stock but he was never a party to the alleged oral agreement that there was to be equal control between plaintiff and Petry. Voynow was also at all times a director of the company. After reclassification of the stock of the company in February, 1934, by virtue of his one-third ownership in the Class B dividend-paying stock, he shared with Petry and the plaintiff in the division of the company’s dividends. The alleged agreement for equal control between Petry and the plaintiff in the circumstances could never be binding upon Voynow or upon the corporation. In those cases where the courts give effect to agreements of stockholders which vitally alter the ordinary provisions of corporate procedure, such agreement is given effect only when it is by unanimous agreement of the stockholders (Matter of American Fibre Chair Seat Corp., 265 N. Y. 416; Benintendi v. Kenton Hotel, 294 N. Y. 112; Millspaugh v. Cassedy, 191 App. Div. 221).
In his right to an equal division with Petry of dividends and profits of the corporation, plaintiff is amply protected by written documents. He is likewise safeguarded in his official position with the company and in the fixation of his salary (approximately equal to that of Petry’s) by written agreement so long as he or members of his family own 44% of the voting stock of the corporation. Petry, however, is entitled to exercise his right of control as the majority voting stockholder — a right which he has never surrendered.
In order to obtain an injunction against the exercise of a statutory right to have the certificate of incorporation amended so as to provide for five directors instead of four and a reformation of the certificate of incorporation to provide that the number of directors shall not be changed except by a vote of 75% of the voting stock, and amending section 4 of article I, and eliminating section 10 of article II of the by-laws, plaintiff was obliged to establish bis right to such relief by clear, positive and convincing proof. Such proof is not here. Nor is there any basis for a reformation of the corporate documents as ordered *561 by the learned Referee. There is no evidence of any fraud or mutual mistake or of any mistake. Reformation may be granted only upon a certainty of error (Amend v. Hurley, 293 N. Y. 587, 595).
Plaintiff has not made out a case either for an injunction or for a reformation of the corporate documents. Defendant Petry is entitled to a judgment upon his counterclaim adjudging the provision of the by-laws which limits the number of directors of the corporation to four null and void and decreeing that he may exercise his statutory right to increase the number of directors of the corporation as prayed for. The judgment should be reversed, the complaint dismissed, with costs and the relief demanded in the counterclaim should be granted.